**Fate Thomas STEWART, Jr.,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 02A03–0103–CR–89.**

Court of Appeals of Indiana.

Aug. 31, 2001.

Stanley L. Campbell, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Following a jury trial, Fate Thomas Stewart, Jr. was convicted of Operating a Vehicle While Intoxicated, as a Class A misdemeanor, and sentenced to one year executed with a 90 day credit against the sentence. Stewart appeals and raises the following two issues for our review:

1. Whether the trial court erred when it admitted the results of Stewart's breathalyzer test.

2. Whether the trial court erred when it sentenced Stewart to the maximum one-year sentence without having articulated aggravating and mitigating circumstances.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In the early morning hours of June 30, 2000, Fort Wayne Police officer Jon Bonar observed Stewart drive through a red light. Bonar activated the lights and siren on his patrol vehicle as he followed Stewart for several blocks and until Stewart finally stopped. When he reached Stewart's car window, Bonar noticed a strong odor of alcohol and saw an empty gin bottle lying on Stewart's front seat. After Stewart failed two field sobriety tests, Bonar placed him under arrest for operating while intoxicated. Bonar then frisked Stewart, handcuffed him, checked the inside of his mouth for a foreign substance, and sat him in the backseat of Officer Hudson's car since Hudson had arrived to assist Bonar with the arrest. With Bonar following, Hudson drove Stewart to the police station where they administered a breathalyzer test. Stewart registered a blood-alcohol level of .21.

The State charged Stewart with Resisting Law Enforcement, as a Class D felony, and Operating a Vehicle While Intoxicated. At trial, Officer Bonar testified concerning Stewart's arrest and the breathalyzer test results. Officer Hudson did not testify. A jury found Stewart not guilty of resisting law enforcement but guilty of operating while intoxicated. The trial court entered judgment of conviction and sentenced Stewart to one year executed with 90 days' credit for time served prior to trial. This appeal followed.

### DISCUSSION AND DECISION

#### Breathalyzer Results

Stewart first argues that the trial court erred when it admitted his breathalyzer

test results into evidence because the State failed to lay a sufficient foundation for their admission. Specifically, Stewart contends that because Bonar did not drive him to the jail following his arrest, Bonar failed to observe him for the twenty-minute period prescribed by the Indiana University Department of Toxicology. We cannot agree.

■ For the results of a breath test to be admissible, the test operator, test equipment, chemicals used in the test, and the techniques used in the test must have been approved by the Department of Toxicology. Ind.Code § 9–30–6–5(d); *Thurman v. State*, 661 N.E.2d 900, 902 (Ind.Ct. App.1996). As the party offering the breath test results, the State bears the burden of laying the foundation for admitting those results into evidence. *Thurman*, 661 N.E.2d at 902. "Thus, the State must establish the proper procedure and demonstrate that the operator followed the procedure." *Id.* The sufficiency of a foundation for admitting the results of a breath test is a matter within the sound discretion of the trial court, and we review the court's decision for an abuse of discretion. *Id.*

The Department of Toxicology regulations provide:

> The person to be tested must have had nothing to eat or drink, must not have put any foreign substance in his or her mouth or respiratory tract, and must not smoke within twenty (20) minutes prior to the time a breath sample is taken.

■ *See* IND. ADMIN. CODE tit. 260, r. 1.1–4–8(1) (1999). This regulation does not require twenty minutes of continuous observation. *Daum v. State*, 625 N.E.2d 1296, 1297 (Ind.Ct.App.1993), *trans. denied.* Rather, it only requires the State to introduce evidence that the person tested have had nothing to eat, drink, or smoke, and have not put any foreign substance in his mouth or respiratory tract within twenty minutes of the breath test. *Id.*

■ Here, Bonar stopped Stewart's car around 2:30 a.m. Bonar testified that after Stewart failed two field sobriety tests, he "handcuffed him, ... patted him down, and removed everything he had on his person." Record at 235. Further, Bonar inspected Stewart's mouth with a flashlight to make sure he was not eating anything and then placed him in the back seat of another officer's squad car. Stewart was transported to the police station, with Bonar following in a different squad car, and was given a breathalyzer at 3:03 a.m. Bonar's testimony satisfies the State's burden to present evidence that Stewart did not eat, drink, or smoke anything within twenty minutes prior to the breathalyzer test. *See Nasser v. State*, 646 N.E.2d 673, 680 (Ind.Ct.App.1995) (upholding breath test results even though defendant was handcuffed and seated in back of squad car for approximately fifteen minutes away from officer's direct observation).

Stewart does not dispute the State's evidence but, nevertheless, argues that to lay a proper foundation, the State was required to introduce the testimony of Officer Hudson because he was the only officer who could have "observed" Stewart during the ride to the police station. We conclude "that it is unnecessary to impose this additional burden on police officers." *See Thurman*, 661 N.E.2d at 903 (holding that officers are not required to open and visually inspect a subject's mouth before conducting a breath test). Indeed, as we have already noted, police are not required to observe a subject for twenty continuous minutes before administering a breath test. *See Daum*, 625 N.E.2d at 1297. In fact, we have previously held that such a "continuous observation requirement is specious: one may wonder how the officer

could be expected to drive without taking his eyes off of his passenger." *Id.* The State met its burden of establishing the twenty-minute observation period required to obtain a valid breath test.

### Sentencing

Stewart next contends that the trial court erred when it sentenced him to the maximum term of one year without articulating the aggravating or mitigating circumstances that affected its decision. Again, we cannot agree.

■ Sentencing decisions rest within the sound discretion of the trial court, and on appeal the trial court's decision will be reversed only upon a showing of a manifest abuse of that discretion. *Price v. State,* 725 N.E.2d 82, 85 (Ind.2000). This court will revise a sentence authorized by statute only where the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 17(B); *Hurt v. State,* 657 N.E.2d 112, 114 (Ind. 1995).

■ The question Stewart presents is one of first impression: whether trial courts are required to articulate aggravating and mitigating factors in sentencing those persons convicted of a misdemeanor. In felony cases, when a trial court relies on aggravating or mitigating circumstances to deviate from a presumptive sentence, the court is required to identify all significant mitigating and aggravating circumstances; state the specific reason why each circumstance is considered to be mitigating or aggravating; and articulate its evaluation and balancing of the circumstances when determining if the mitigating circumstances offset the aggravating ones. *Carter v. State,* 711 N.E.2d 835, 837–38 (Ind. 1999); *See* Ind.Code § 35–38–1–3. Felony statutes contain a presumptive sentence that may be enhanced or reduced. Misdemeanor statutes, however, do not establish a presumptive sentence but only state the

maximum allowable sentence. Without a presumptive sentence from which to start, trial courts have nothing to enhance or reduce. Indeed, the definition of "enhanced," which is "made greater [or] increased," requires a starting point. BLACK's LAW DICTIONARY 550 (7th ed. 1999). Misdemeanor statutes have no presumptive sentence and, hence, no such starting point.

■ A trial court must consider several statutory factors in determining what sentence to impose for a crime, I.C. § 35–38–1–7.1, but a plain reading of the felony and misdemeanor statutes belies the notion that our legislature intended to require trial courts to articulate aggravating and mitigating circumstances in sentencing those convicted of misdemeanors. The interpretation of a statute is a question of law reserved for the courts. *State v. Rans,* 739 N.E.2d 164, 166 (Ind.Ct.App. 2000), *trans. denied.* In construing a statute, we must consider the whole act and, if possible, effect must be given to every word and clause therein. *Patel v. Barker,* 742 N.E.2d 28, 31 (Ind.Ct.App.2001). If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.*

■ For example, Indiana's Class A felony sentencing statute provides, in relevant part:

A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances.

Ind.Code § 35–50–2–4. In contrast, Indiana Code Section 35–50–3–2 states that "[a] person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year." Had the legislature intended to provide a presumptive sentence for misdemeanors, it

could have done so as it did with felonies. In construing a statute, our foremost duty is to determine and give effect to the true intent of the legislature, and it is just as important to recognize what a statute does not say as it is to recognize what it does say. *Peele v. Gillespie*, 658 N.E.2d 954, 958 (Ind.Ct.App.1995). The legislature has not designated presumptive sentences for misdemeanors. We may not read into a statute that which is not the expressed intent of the legislature. *Id.*[1]

Here, the legislative intent is expressed in Indiana Code Section 35–38–1–3, which governs the procedure at pre-sentence hearings and provides in part:

> Before sentencing a person for a *felony*, the court must conduct a hearing to consider the facts and circumstances relevant to sentencing . . . [I]ncluding:
>
> &ast; &ast; &ast;
>
> ■ (3) if the court finds aggravating circumstances or mitigating circumstances, a statement of the court's reasons for selecting the sentence that it imposes.

(Emphasis added). The statute requires our courts to articulate aggravating and mitigating circumstances only in felonies. The statute excludes misdemeanor sentencing by implication. *See Campbell v. State*, 716 N.E.2d 577, 579 (Ind.Ct.App. 1999), *opinion on reh'g*, (reiterating that when certain items or words are specified or enumerated in a statute, then by implication, other items or words not so specified or enumerated are excluded). The legislature's decision to omit presumptive sentences from misdemeanor statutes reflects a realistic appraisal of this state's judicial resources. Our high-volume misdemeanor courts would be overburdened if trial judges were required to articulate and balance aggravating and mitigating circumstances before imposing sentence on a misdemeanor conviction.

## Conclusion

■ In sum, the trial court did not err when it allowed the State to introduce into evidence the results of Stewart's breathalyzer. Further, we hold today that a trial court is not required to articulate aggravating and mitigating circumstances when it imposes a sentence for a misdemeanor conviction. The trial court, therefore, did not err when it sentenced Stewart to the maximum term of one year[2] without finding any aggravating or mitigating circumstances.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.

---

1. We acknowledge that in *Smith v. State*, 621 N.E.2d 325, 326 (Ind.1993), our supreme court said that "fundamental sentencing guidelines with respect to treatment of felonies likewise apply to misdemeanors." However, that case addressed the differing lengths of probation between felonies and misdemeanors, and we do not believe it applies to the issue here of whether a trial court must articulate aggravating and mitigating circumstances when it imposes sentence upon a misdemeanor conviction.

2. In addition, we conclude that Stewart's one-year sentence was not manifestly unreasonable. Ind. Appellate Rule 17(B); *Hurt v. State*, 657 N.E.2d 112, 114 (Ind.1995). Stewart's criminal history includes ten prior felony convictions, including Robbery and Armed Robbery. Further, while out on bond in this case, police arrested Stewart, and he later pleaded guilty, to another charge of operating a vehicle while intoxicated. On the night Stewart was arrested in this case, officer Bonar followed Stewart with his lights and siren activated for several blocks and observed Stewart run two red lights and drive on the wrong side of the road before Stewart finally pulled to a stop.