STATE of Indiana, Appellant–Plaintiff,

v.

Joseph MOLNAR, Appellee–Defendant.

No. 64A03–0305–CR–202.

Court of Appeals of Indiana.

Feb. 13, 2004.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

David E. Braatz, Crown Point, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

The State brings this interlocutory appeal to challenge the trial court's granting of Joseph Molnar's motion to suppress results from a breath test. We reverse.

### Issue

The sole issue for our review is whether the trial court erroneously granted the motion to suppress.

### Facts

The relevant facts are that on February 24, 2003, the State charged Molnar with operating a vehicle while intoxicated, a Class A misdemeanor, along with two other traffic offenses. In April 2003, Molnar filed a motion to suppress evidence, which he later withdrew, and filed an amended motion to suppress.

In May 2003, the trial court conducted an evidentiary hearing on the motion to suppress. The trial court's order granting the motion provides in part:

1. On February 20, 200[3], the defendant drove his vehicle westbound [in Valparaiso]. Officer Tom Zimmerman of the Valparaiso Police Department had probable cause to stop the Defen-

dant, as he was driving 43 mph in a 25 mph zone.

2.    After seeking license and registration, the officer noticed the smell of alcohol coming from the defendant. After a series of probable cause tests, the defendant agreed to submit to a chemical test pursuant to Indiana Code 9–30–6–5.

3.    Prior to twenty minutes before the start of the breathalyzer ... the defendant spit out a good portion ("wad") of chewing tobacco at the side of the roadway in which defendant was stopped, and prior to defendant giving a breath sample into a portable breath tester (PBT). Defendant testified that the chewing tobacco was lodged between the gums of his lower teeth and his lower lip and that he removed the clump with his finger from his mouth. The chewing tobacco was the fine grain cut of the brand name "Copenhagen". It is undisputed that Defendant did have chewing tobacco in his mouth prior to taking the breathalyzer test. Officer Fisher testified that he did not see any particles of chewing tobacco in defendant's mouth prior to the test, as he used a flashlight to peer into defendant's mouth, had him roll his tongue around, and did not see particles of chewing tobacco in the tube in which defendant was blowing to provide a breath sample.

4.    Officer Fisher testified that a correct air sample was provided rendering a blood alcohol score of .12 BAC. Defendant was then placed under arrest for Operating a Vehicle While Intoxicated.

5.    260 IAC 1.1–4–5 issues the State Department of Toxicology approved methods for conducting a chemical/breath test for alcohol intoxication and reads:

*Sec. 2.    The following is the approved method to conduct a B.A.C. Verifier test for alcoholic intoxication:*

*(1) The person to be tested must have had nothing to eat or drink, must have (sic.) not have put any foreign substance in his/her mouth or respiratory tract, and must not smoke within twenty (20) minutes prior to the time a breath sample is taken.*

6.    Prior to the test, and before twenty (20) minutes, defendant was not able to rinse his mouth of any additional residue through the use of water, a drinking fountain or otherwise. Defendant did not ask to do so prior to taking the test. Officer Fisher testified that he asked Defendant if he had any foreign objects in his mouth, to which defendant said "no".

7.    Defendant testified that he has chewed tobacco for twenty years and that the removal of the primary clump of tobacco fails to dislodge all of the chewing tobacco. Defendant's wife testified that when arriving home from work, defendant rinses his mouth with water and usually always leaves additional particles in either the sink or the toilet.

8.    Defendant submitted Exhibits A and B at hearing which contained the remnants of chewing tobacco within the rinse of water twice after removing the initial clump of tobacco, which defendant removed in open court. The first water glass contained a yellowish liquid containing visible tobacco particles floating in the glass of water. The second flush of water taken 15 seconds after the first produced a clearer liquid and some, but not as

many, particles as the first glass of flush.

9. Defendant's theory at hearing was that the particles exhibited in Defendant's Exhibits A and B were still in his mouth when he tendered his breath test on the night of his arrest and that those particles invalidated the breath sample in violation of 260 IAC 1.1–4–5 (the 20 minute rule).

\* \* \* \* \*

12. The case most similar to the present set of facts is *People v. Miller,* [219 Ill.App.3d 246, 164 Ill.Dec. 456, 583 N.E.2d 10 (1991), *appeal denied by* 143 Ill.2d 644 [167 Ill.Dec. 406], 587 N.E.2d 1021]. Illinois administrative procedure for breath testing in *Ill. Admin. Code title 77, Section 510.60(a)* is similar to Indiana's 260 IAC 1.1–4–5. In *Miller,* the Illinois Appellate Court upheld a trial court's order suppressing breath test results wherein defendant testified that he swallowed his chewing tobacco prior to giving a breath sample. Most of the caselaw deals with a credibility determination of whether a defendant has a foreign object in his/her mouth prior to testing. Here, all parties concede that defendant had chewing tobacco in his mouth prior to the testing. The officers testified that they saw noting [sic] further. Defendant counters that without a rinse from water, tobacco residue will always be present during testing.

13. The purpose of the 20–minute observation period is to ensure that the defendant does not regurgitate, vomit, smoke or ingest anything which will render the breathalyzer test results unreliable. Although chewing tobacco has been found to be a violation of the twenty minute rule in an Illinois case,

*Miller* [219 Ill.App.3d 246, 164 Ill.Dec. 456], 583 N.E.2d 10, it was open for rebuttal by the State through the use of expert testimony. At least initially, once it is determined that the defendant had particles in his mouth within twenty minutes of providing a breath sample, it is axiomatic that the test is prima facie invalid for violation of 260 IAC 1.1–4–5. Here, defendant provided a demonstration in court to show that upon removal of the basis clump of chewing tobacco from one's mouth, particles of chewing tobacco residue continue to exist until some sort of liquid flushing ensues. The demonstration provided in Defendant's Exhibit A and B was valid under Indiana Rule of Evidence 611(a)(1)....

14. As was held in *Miller, supra,* and *People v. Bergman,* 253 Ill.App.3d 369 [191 Ill.Dec. 462], 623 N.E.2d 1052 (Ill.App.1993) in a suppression hearing, after defendant makes a prima facie case for suppression, the burden shifts to the State to produce evidence in rebuttal. Here, the State could have rebutted the evidence of the defendant in two ways:

a. produce expert testimony that the particles of chewing tobacco left in the post-spit rinse were insufficient to affect the veracity of the results under 260 IAC 1.1–4–5;

b. produce expert testimony that chewing tobacco or its post-rinse residue does not contain indicia of ethynol [sic] to affect the breath test.

Neither version of expert testimony was produced at hearing by the State....

15. State argued that the officer asked defendant if he had any foreign objects in his mouth, to which the defendant replied "no". Defendant testi-

fied that he thought "foreign objects" referred to "pennies or some such objects". State argued that defendant invited the breath test error by his false replies. This situation was addressed in the North Dakota Court in *Knoll v. North Dakota Dept. of Transportation, supra* [,] wherein it held, "if a person refuses to cooperate with an operator's attempt to follow the State Toxicologist's approved methods, the person cannot thereafter challenge the foundation for admissibility of the test results on the ground that the approved methods were not followed." *Id*[.] at 195. The court finds the *Knoll* case unpersuasive. Here, the defendant testified that he so freely and often chewed tobacco that he did not consider the residue in his mouth as a foreign object, and he believed he was answering the officer's questions truthfully. Also, law enforcement can further avoid this problem in the future by allowing 1–3 rinses of water from the mouth of tobacco chewing suspects prior to testing.

16. Because the Department of Toxicology Guidelines were not followed in this matter, the Court grants defendant's Motion to Suppress the results of the February 21, 2003 breathalyzer test, and orders in limine that any mention of the test, failure of the test, or test scores shall be prohibited from the trial on the above matter.

App. pp. 24–28 (some internal citations omitted). The trial court certified the issue for interlocutory appeal, which the State now seeks.

### Analysis

The State challenges the trial court's granting of Molnar's motion to suppress the breath test results. Molnar's motion to suppress the breath test results was based on the premise that the test was not properly administered because he had tobacco residue in his mouth at the time of the test. Breathalyzer test results are admissible when the test operator, test equipment, chemicals used in the test, if any, and the test techniques have been approved by the Department of Toxicology. *State v. Johanson*, 695 N.E.2d 965, 966–67 (Ind.Ct.App.1998). The failure to follow the techniques renders the breath test's results inadmissible. *Id.* at 967. The sufficiency of a foundation for admitting breathalyzer test results is a matter left to the sound discretion of the trial court. *Id.* Thus, the trial court is reviewed for an abuse of discretion. *Id.*

The State has the burden of establishing the foundation for admitting the breath test results because the State is the party offering the results of the test. *Id.* The State must, therefore, set forth the proper procedure and show that the operator followed such procedure. *Thurman v. State*, 661 N.E.2d 900, 902 (Ind.Ct.App. 1996). The procedure for administering a breathalyzer test as promulgated by the Department of Toxicology in the Indiana Administrative Code is described in part, "The person to be tested must have had nothing to eat or drink, *must not have put any foreign substance in his or her mouth* or respiratory tract, and must not smoke within twenty (20) minutes to the time a breath sample is taken." 260 IAC 1.1–4–8 (emphasis added).

We are faced with an issue in this case that does not involve a factual dispute but rather a dispute as to what the meaning of "put" is in the context of the administrative code section relating to breathalyzer tests. The State argues that contrary to the trial court's holding, the regulation does not require that one's mouth be free from foreign substances but rather that the regulation only requires that no for-

eign substance be *placed* in the mouth for twenty minutes prior to taking the test. The State specifically challenges the trial court's conclusion that once a defendant proves that he or she had particles in his or her mouth within twenty minutes of providing the sample the test is invalid.

We agree with the State. Because the regulation does not specifically define "put" we must apply rules of statutory construction. Generally, in construing an administrative rule, we use the same principles employed to construe statutes. *Indiana Dep't of Envt'l Mgmt. v. Schnippel Constr., Inc.*, 778 N.E.2d 407, 415 (Ind.Ct.App.2002), *trans. denied.* Words and phrases in a statute are given their plain and ordinary meaning unless they are technical words and phrases having a peculiar and appropriate meaning in the law requiring definition according to their technical import. Ind.Code § 1–1–4–1(1); *Schnippel Constr.*, 778 N.E.2d at 415 (stating that we first look to the plain language of the rule and, if unambiguous, give effect to that plain meaning). In construing an administrative regulation, otherwise undefined words must be given their plain and ordinary meaning. *Indiana Dep't of Natural Res. v. Peabody Coal*, 740 N.E.2d 129, 134 (Ind.Ct.App. 2000).

The word "put" is not defined in the regulation and, therefore, must be given its plain and ordinary meaning, which is "[t]o place in a specified location." AMERICAN HERITAGE COLLEGE DICTIONARY 1112 (3d ed.2000). By using the word "put" in the regulation, the Department of Toxicology prohibited the placement of a foreign substance in the subject's mouth twenty minutes prior to the test. There is no dispute here that Molnar did not place any foreign substance in his mouth within twenty minutes of the test. The regulation makes no provision for residue remaining from matter removed from the subject's mouth before the twenty-minute period begins and does not invalidate the breath test results due to residue remaining in a subject's mouth. It was improper for the trial court to expand upon the plain language of the regulation to effect such a result. Clear and unambiguous statutory meaning leaves no room for judicial construction. *Poehlman v. Feferman*, 717 N.E.2d 578, 581 (Ind.1999); *Wright v. State*, 772 N.E.2d 449, 454 (Ind.Ct.App.2002) (stating that when a statute is clear and unambiguous on its face, we may not interpret the statute).

As the trial court found and both parties agree, the obvious reason for the twenty-minute rule is to prevent a foreign substance from affecting the breath test results. The Department of Toxicology determined that twenty minutes is a long enough period to sufficiently mitigate the contaminating effect of anything contained in a subject's mouth once the matter is removed, including any residue remaining in the mouth.[1] Thus, we must rely on the expertise of the Department and trust that it decided twenty minutes is a sufficient waiting period to protect the integrity and accuracy of the test results.[2] To hold otherwise would be to read a new meaning into the regulation and to essentially mandate that all subjects who have something

---

1. We do agree that the rule clearly contemplates that a substance "put" in the mouth will be removed more than twenty minutes before the test is administered; what we do not conclude is that the rule requires all possible residue from the substance to be removed as well.

2. This is not to say that a defendant would be precluded from presenting evidence at trial that a test result was actually skewed by residue remaining in his or her mouth. Here, no such evidence was presented.

in their mouths and are asked to remove the matter in preparation for a breath test to be administered rinse their mouths to remove any residue that might remain. This is not contemplated by the regulation and must not be imposed by judicial construction. It is improper to second-guess the Department of Toxicology and effectively engage in judicial rule promulgation. *Wray v. State,* 751 N.E.2d 679, 683 (Ind. Ct.App.2001).[3] The regulation's twenty-minute waiting period was designed to alleviate this concern.

The State here satisfied its burden to show that the test was properly administered. After Molnar removed the tobacco from his mouth, the arresting officer asked Molnar if he had any foreign substances in his mouth, to which Molnar replied that he did not. The officer also looked in Molnar's mouth and did not see anything. Molnar did not place any foreign substance into his mouth between that point and the point at which the test was administered at least twenty minutes later. The officer's testimony covered his training and the procedure for the testing. This evidence sufficiently established that the test was properly administered. Molnar failed to present sufficient evidence that the tobacco residue, if any in fact remained by the time the test was administered, affected the outcome of the test in such a way as to call in to question the propriety of the test's administration.[4] We, therefore, conclude that the trial court's decision to grant the motion to suppress was an abuse of discretion. Sufficient foundation for the test results was established to render the test results admissible.

### Conclusion

We conclude that the trial court's decision to grant the motion to suppress was an abuse of discretion because it contravenes the plain language of the regulation. We reverse.

Reversed.

FRIEDLANDER, J., and KIRSCH, J., concur.

---

3. This court recently noted that a provision of the Indiana Administrative Code cited in *Wray* regarding the training of breathalyzer operators was amended in 2000, thus earning *Wray* a "red flag" from Westlaw. *State v. Lloyd,* 800 N.E.2d 196, 2003 WL 22939384 (Ind.Ct.App. Dec.15, 2003). However, the version of the Code cited in *Wray* was in effect during the relevant time period, was not pertinent to the outcome of the case, and except for the one change in the Code cited by the *Lloyd* court, *Wray* remains good law.

4. We recognize Molnar's claim that there was in fact residue in his mouth during the test. He relies in large part on the spit exhibits offered during the suppression hearing to show what was in his mouth at the time of the breath test. We note that the spit exhibits were not an accurate representation of the residue that might have remained in his mouth at the time of the test.