Brenna GUY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0206–CR–267.

Court of Appeals of Indiana.

April 2, 2004.

Robert W. Hammerle, Joseph M. Cleary, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

Brenna Guy brings this interlocutory appeal following the trial court's denial of her motion to suppress the results of her breath test under Indiana Code Section 9–30–6–5 and Indiana Administrative Code Title 260, Rule 1.1–4–8 ("260 IAC 1.1–4–8"). Guy presents a single issue for review, namely, whether the trial court erred when it denied her motion to suppress.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On August 24, 2001, Indianapolis Police Officer Corey Shaffer pulled Guy's car over and administered three field sobriety tests, all of which Guy failed. Guy then agreed to submit to a chemical breath test, which Officer Shaffer administered. Prior to administering the test, Officer Shaffer inspected Guy's mouth and observed "a small stainless steel tongue ring." The officer clarified that it was "not really a ring" but "more like a bar with a ball on each end," in other words, a metal stud.[1] Officer Shaffer then waited more than twenty minutes before he administered the breath test, but he did not ask Guy to remove the metal stud. Guy's test results were 0.11%, and the officer placed her under arrest for Operating While Intoxicated. When Guy was booked into jail, she removed her metal stud upon request. Jail personnel returned the metal stud to her upon her release.

Guy moved to suppress the results of her breath test. Following a hearing, the trial court denied her motion. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *trans. denied.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider the uncontested evidence favorable to the defendant. *Id.*

### Interpretation of 260 IAC 1.1–4–8

"[T]o admit breathalyzer test results, the test operator, test equipment, chemicals used in the test, if any, and the techniques used in the test must have been approved by the [D]epartment of [T]oxicology." *State v. Johanson*, 695 N.E.2d 965, 966–67 (Ind.Ct.App.1998) (citing Ind.Code § 9–30–6–5). As the party offering the results of a breath test, the State has the burden of establishing the foundation for admitting the test. *Id.* at 967. Therefore, the State must establish the proper procedure and demonstrate that the operator followed that procedure. *Id.* The proper procedure is established, in part, by showing that the officer who administered the test complied with 260 IAC 1.1–4–8, which provides in relevant part:

> The following is the approved method to conduct a B.A.C. Datamaster with keyboard test for alcohol intoxication:
>
> (1) The person to be tested must have had nothing to eat or drink, *must not*

---

1. Guy explained that the metal stud is made of surgical stainless steel and consists of a ball on top of her tongue and a fastener underneath.

*have put any foreign substance in his or her mouth* or respiratory tract, and must not smoke *within twenty (20) minutes prior to the time a breath sample is taken.*

(Emphases added).

Guy asserts that the trial court erred when it denied her motion to suppress because the metal stud is a "foreign substance" under 260 IAC 1.1–4–8(1). The State responds that the trial court's denial of her motion was proper because (1) Guy *put* the metal stud in her mouth more than twenty minutes prior to the test, and (2) a metal stud is not a "foreign substance" under the rule. The parties' arguments require that we examine the meaning of 260 IAC 1.1–4–8(1), which our courts have had few opportunities to do.

### A. Meaning of "Put"

■ Because it would render the "foreign substance" dispute moot, we first address the State's contention that the test complied with 260 IAC 1.1–4–8(1) because Guy *put* the stud in her tongue *more than* twenty minutes prior to the time the test was administered. In particular, the State asserts that the plain language of the rule states that a test subject may not place a foreign substance in her mouth within twenty minutes of the test and does not address substances already present in that person's mouth. We cannot agree.

As the State acknowledges, in *State v. Albright*, 632 N.E.2d 725, 725 (Ind.1994), our supreme court, in addressing a former version of the rule, stated:

> 260 IAC 1.1–4–8(1) requires a twenty[-]minute waiting period prior to the administration of the Intoxilyzer test, *during which time the subject may not have had any foreign substance in his mouth.* This requirement relates to the reliability of the results, because foreign substances may alter the blood-alcohol content reading. Therefore, the State

must prove that the test was administered in the proper manner.

(Citations omitted, emphasis added). In *Albright*, an officer, after having administered an initial breath test, determined that the test subject had peanut fragments in his mouth. *Id.* The officer then immediately gave a second test, and after waiting an additional twenty-four or twenty-five minutes, he conducted a third test. *Id.* at 725–26. The defendant argued that the State failed to prove that the officer had complied with the proper testing procedures because the officer did not comply with the twenty-minute waiting period, and our supreme court disagreed. *Id.* at 726. But critical to our decision today is the court's statement in *Albright* that during the twenty-minute waiting period, the subject must not have *had* any foreign substance in his or her mouth.

The State asserts that the *Albright* court's interpretation of 260 IAC 1.1–4–8(1) is dicta. But we reject that contention for two reasons. First, the opinion as a whole suggests that, had the officer in that case failed to administer additional tests after having found the peanut fragments in the subject's mouth, the State could not have met its burden of proving that the officer complied with proper test procedures. Moreover, regardless of when the subject had put the peanuts in his mouth, the fact that the peanut fragments were inside his mouth *while* the test was administered was significant and caused the officer to administer additional tests. The State's attempt to dismiss our supreme court's opinion in *Albright* as binding authority must fail. Following *Albright*, we conclude that the word "put" as it appears in 260 IAC 1.1–4–8(1) means "present" and that a person to be tested must not have had any foreign substance present in his

or her mouth within twenty minutes prior to the time a breath sample is taken.[2]

But another panel of this court recently agreed, at least in part, with the State's interpretation of 260 IAC 1.1–4–8(1). Specifically, in *State v. Molnar*, 803 N.E.2d 261, 262 (Ind.Ct.App.2004), the defendant sought to suppress the results of his breath test because he claimed that he had residue from chewing tobacco in his mouth when he took the test. While it was undisputed that the defendant had spit out chewing tobacco prior to submitting to the test, the officer who administered the test testified that when he looked inside the defendant's mouth with a flashlight, he did not observe any tobacco residue. But the defendant asserted that, based on his experience with chewing tobacco, he had to have had residue in his mouth during the test. To support that assertion, during the suppression hearing he removed a clump of tobacco from his mouth, rinsed his mouth twice with water, and spit twice. Because there was residue in his spit after rinsing his mouth, the defendant asserted, and the trial court agreed, that there must have been tobacco residue in his mouth when he submitted to the breath test. *Id.* at 262–63. The trial court granted the defendant's motion to suppress.

In reversing the trial court, the *Molnar* court interpreted 260 IAC 1.1–4–8(1) as follows: "By using the word 'put' in the regulation, the Department of Toxicology prohibited the placement of a foreign substance in the subject's mouth twenty minutes prior to the test." *Id.* at 266. We then stated in relevant part:

There is no dispute here that Molnar did not place any foreign substance in his mouth within twenty minutes of the test. The regulation makes no provision for residue remaining *from matter removed from the subject's mouth before the twenty-minute period begins* and does not invalidate the breath test results due to residue remaining in the subject's mouth.

\* \* \*

As the trial court found and both parties agree, the obvious reason for the twenty-minute rule is to prevent a foreign substance from affecting the breath test results. The Department of Toxicology determined that twenty minutes is a long enough period to sufficiently mitigate the contaminating effect of anything contained in a subject's mouth *once the matter is removed,* including any residue remaining in the mouth. Thus, we must rely on the expertise of the Department and trust that it decided twenty minutes is a sufficient waiting period to protect the integrity and accuracy of the test results.

*Id.* (emphases added, footnotes omitted).

We respectfully disagree with *Molnar's* interpretation of 260 IAC 1.1–4–8(1) to the extent that the panel determined that, as long as a subject has placed a foreign substance in his mouth *more than* twenty minutes before a breath test, the test complies with the rule. Under that literal interpretation, a subject could place a penny, food, or any other substance in his mouth twenty-one minutes before taking a test, leave the substance in his mouth dur-

**2.** The State also directs us to *Thurman v. State,* 661 N.E.2d 900 (Ind.Ct.App.1996), in which this court determined that 260 IAC 1.1–4–8 contains no requirement that an officer, prior to administering a breath test, conduct a visual inspection of the subject's mouth to be in compliance with the administrative rule. But *Thurman* has no bearing on Guy's case, where it is undisputed that Officer Shaffer observed the metal stud in Guy's mouth before he administered the test.

ing the test, and the results would be valid under the rule. That interpretation would yield an absurd result. *See Murray v. State,* 798 N.E.2d 895, 902 (Ind.Ct.App. 2003) (addressing rule of construction that we presume legislature intended language in statute to be applied logically and not to bring about an unjust or absurd result). Further, *Molnar* does not address our supreme court's decision in *Albright,* which is binding authority on the matter.

Our review of *Molnar* in its entirety suggests that the decision has limited applicability. Specifically, the panel in that case noted, "We do agree that the rule clearly contemplates that a substance 'put' in the mouth *will be removed* more than twenty minutes before the test is administered; what we do not conclude is that the rule requires all possible residue from the substance to be removed as well." *Molnar,* 803 N.E.2d at 266 n. 1 (emphasis added). Accordingly, the panel likely would have reached a different outcome if, as with Guy's metal stud, the defendant had not removed the chewing tobacco from his mouth before he submitted to the breath test. We conclude that the holding in *Molnar* is limited to cases where a defendant has a foreign substance in his mouth and *removes that substance* prior to the test.

Unlike in *Molnar,* the following facts in this case are undisputed: (1) when Officer Shaffer inspected Guy's mouth before he administered the test, he observed the metal tongue stud; (2) Officer Shaffer did not ask Guy to remove the metal stud; and (3) Guy had the metal stud in her mouth during the breath test. Thus, *Molnar* is clearly distinguishable and does not determine the outcome here. Rather, our supreme court's interpretation of 260 IAC 1.1–4–8(1) in *Albright* controls and, following that case, we conclude that a person to be tested must not have had any foreign

substance in his mouth within twenty minutes prior to the time a breath sample is taken.

### B. "Foreign Substance"

■ Next, the parties dispute whether a metal stud is a "foreign substance" under 260 IAC 1.1–4–8(1). As we stated in *JKB, Sr. v. Armour Pharm. Co.,* 660 N.E.2d 602, 605 (Ind.Ct.App.1996), *trans. denied:*

When interpreting a statute, the foremost objective is to determine and effect legislative intent. Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible. Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. Courts are to examine and interpret the statute as a whole, giving words their common and ordinary meaning, and not overemphasize a strict, literal, or selective reading of individual words. Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute.

(Citation omitted); *see Indiana Port Comm'n v. Consolidated Grain and Barge Co.,* 701 N.E.2d 882, 890 (Ind.Ct.App.1998) (applying rules of statutory construction to interpret administrative regulations), *trans. denied.*

Our supreme court addressed the intended purpose of 260 IAC 1.1–4–8(1), and specifically the "foreign substance" provision, in *Albright* when it stated that that "requirement relates to the reliability of the results, because foreign substances may alter the blood-alcohol content reading." 632 N.E.2d at 725 (citing generally *Tyner v. State,* 503 N.E.2d 444 (Ind.Ct. App.1987)). With that intended purpose in mind, the rule does not define "foreign substance," nor does it enumerate specific substances that may affect the breath test. Rather, it precludes *any foreign substance*

in the test subject's mouth within twenty minutes prior to the time a breath sample is taken.

Guy directs us to Black's Law Dictionary, which defines "foreign substance" as "[a] substance found in a body, organism, or thing where it is not supposed to be found...." BLACK'S LAW DICTIONARY 660 (7th ed.1999). Similarly, the word "foreign" is defined, in part, as "[s]ituated in an abnormal or improper place in the body and typically introduced from outside: *a foreign object in the eye.*" THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 711 (3d ed.1996) (italics in original). "Abnormal" means "[n]ot typical, usual, or regular." *Id.* at 4. A metal stud inserted through a person's tongue falls within the plain meaning of "foreign" because it is situated in an atypical, unusual, or irregular place in the body and is introduced from outside.

Still, the State asserts that if we were to conclude that a metal stud is a foreign substance, then a variety of dental appliances would necessarily be foreign substances under the rule as well. The State also points out that other states have determined that a test subject is not required to remove dentures or false teeth before a breath test. *See Farr v. State,* 914 S.W.2d 38, 40 (Mo.Ct.App.1996); *People v. Witt,* 258 Ill.App.3d 124, 196 Ill.Dec. 459, 630 N.E.2d 156, 158 (1994). But based on the dictionary definitions above, we cannot agree with the State's contention that dental appliances would necessarily constitute "foreign substances" under the rule. Although introduced from outside, dental appliances are not situated in an abnormal, unusual or irregular place in the body, and

such appliances are prevalent throughout the general population. Also, Guy's motion to suppress does not concern dental appliances, and that is a question left for another day.[3]

■ Again, the burden is on the State to prove that the officer who administered the breath test followed proper procedures. *Baran v. State,* 639 N.E.2d 642, 646 (Ind.1994); *Albright,* 632 N.E.2d at 725. Indiana law requires strict compliance with the procedures adopted by the Department of Toxicology. *Crouch v. State,* 638 N.E.2d 861, 864 (Ind.Ct.App. 1994). Failure to comply with rules and procedures promulgated by the Department leads to the test results being inadmissible. *See id.*

■ Here, Guy had no burden to show that the metal stud affected her test results. Rather, to succeed on her motion, she need only prove that the metal stud is a "foreign substance" under the rule. She has met that burden. The language of 260 IAC 1.1–4–8(1) broadly states that the person to be tested must not have put *any* foreign substance in her mouth within twenty minutes prior to the time a breath sample is taken. Because Guy had a foreign substance in her mouth not only within twenty minutes of the test, but also during the test, the State cannot show that proper procedures were followed in this case.

Based on the undisputed facts and the plain meaning of the term "foreign," we conclude that Guy's metal tongue stud, which the officer saw before he administered the breath test and which was easily removable, falls within the plain meaning

---

**3.** It is unlikely that the State Department of Toxicology contemplated whether metal tongue studs, or any type of oral piercing for that matter, constitute "foreign substances" under the rule. But certainly dental appliances were contemplated. Perhaps the most effective way to deal with this issue would be for the Department of Toxicology to clarify the rule.

of the phrase "any foreign substance" under 260 IAC 1.1–4–8(1). Therefore, we hold that the trial court erred when it denied Guy's motion to suppress.

Reversed.

SULLIVAN, J., concurs with separate opinion.

STATON, Sr.J., dissents with separate opinion.

SULLIVAN, Judge, concurring.

I concur but write separately to put forth some concerns or observations with respect to possible ramifications of our decision.

In this respect Judge Staton's dissent raises a very real question creating a quandary for enunciation of a workable requirement. Judge Staton validly observes that the factor of paramount importance is the effect, if any, of a substance, whether foreign or not, upon the accuracy and reliability of the breath test. In this context, whether the substance is readily removable or not is not critical.

Yet, in considering substances like dental fillings, orthodontic braces, implants, etc. which are not removable and certainly not readily removable, one may question whether those materials are any less likely to skew the results of a breath test than a metal tongue stud. Even so, I join with Judge Najam in his observation that the issue of dental appliances "is a question left for another day." Op. at 841.

Furthermore, placement of the burden upon the State to demonstrate the foundation for admitting the results of the test is sound. Not only as noted by Judge Najam, is it the State which is proffering the test result, it is more practical to place the burden upon the State. The State utilizes the testing device in its law enforcement function. Because its use is subject to the protocol set forth by the Indiana Department of Toxicology, it is not unreasonable, when the validity of a test result has been challenged, to place the onus upon the State to demonstrate, by testimony of its own experts or otherwise, that any substance in the mouth did not distort the test results.

Conversely, if it wished to do so our General Assembly could legislate that it is an affirmative defense available to a defendant to demonstrate the test result was likely to have been adversely and prejudicially affected by the substance. But of course even without an affirmative defense provision, a defendant need not sit quietly when breathalyzer test results are offered into evidence. Objections upon relevancy or other grounds are available. Furthermore, even if the results are admitted a defendant is free through cross-examination or his own witnesses to cast negative reflections upon the results. See *Tyner v. State*, 503 N.E.2d 444, 449 (Ind.Ct.App. 1987), superseded on other grounds by statute as recognized by *Allman v. State*, 728 N.E.2d 230 (Ind.Ct.App.2000).

Subject to these comments, which if placed within a majority opinion would constitute pure dicta, I concur in the reversal of the denial of Guy's motion to suppress.

STATON, Senior Judge, dissenting.

The only issue before the Court is whether a stainless steel tongue stud in Guy's mouth during the chemical breath test is a "foreign substance" as contemplated by the statutory guidelines. I think not.

I dissent. The judgment of the trial court should be affirmed. The statutory definition of a "foreign substance" could not reasonably include every possible item found attached or unattached in a person's mouth or possession. The metal object in

Guy's mouth, a stainless steel tongue stud, was part of her persona.[4] When objects are a part of a person's persona and they are characterized as foreign substances, some evidence must be presented to indicate that they justifiably come within the meaning of the statute setting forth the guidelines to be followed for the test. In Guy's record, there is no evidence—none.

The "foreign substance" characterization for definition must be considered in the context of the statutory guidelines for a chemical breath test for alcohol. The guidelines provide in part: "The person to be tested must have had nothing to eat or drink, must not have put any foreign substance in his or her mouth or respiratory tract, and must not smoke within twenty (20) minutes to the time a breath sample is taken." 260 IAC 1.1–4–8. From this context, it is difficult to reasonably understand how the Majority transformed a stainless steel tongue stud into a "foreign substance."

The stainless steel stud was in Guy's mouth before, during, and after the test. An experienced police officer did not ask her to remove the stainless steel stud when he administered the test. He was aware of the stud in Guy's mouth before the test. The trial judge did not think that the stainless steel stud was a foreign substance when he denied the motion to suppress. There is absolutely no evidence in the record to justify the Majority's characterization of the stainless steel stud as a foreign substance. It was a part of Guy's persona until proven otherwise.

The intent and purpose of the statute is to assure a fair, accurate test result. With the aid of the Indiana University Department of Toxicology, guidelines have been established. *State v. Johanson*, 695 N.E.2d 965, 966–67 (Ind.Ct.App.1998) (citing Ind.Code § 9–30–6–5). A waiting period of "twenty (20) minutes" is required before the test is administered. During this waiting period nothing is to be "put" in the mouth of the person being tested. *State v. Molnar*, 803 N.E.2d 261, 265 (Ind. Ct.App.2004). The twenty (20) minute waiting period appears to be the crucial guideline for the test. In *State v. Albright*, 632 N.E.2d 725, 726 (Ind.1994), the Supreme Court concluded that the record clearly exhibited that the police officer waited the necessary twenty (20) minutes. Albright had peanut fragments in his mouth at the time of the test. In *Molnar*, Molnar had been chewing tobacco before the test. After he spit the tobacco wad out, there were still some fragments of the tobacco between his teeth, but he had not "put" anything in his mouth during the twenty (20) minute waiting period. The Court of Appeals found that the guidelines had been correctly observed because nothing had been "put" in Molnar's mouth during the twenty (20) minute waiting period. *Molnar*, 803 N.E.2d at 267. Likewise, in *Albright*, the Supreme Court found that the twenty (20) minute guideline requirement had been followed. 632 N.E.2d at 726. The peanut fragments in Albright's mouth did not render the test invalid.

*Foreign Substance* is a very broad term. Its meaning depends on the context in which it is used. In the Statute, the term "foreign substance" is used in relation to a chemical breath test to determine the amount of alcohol in the subject's system.

---

4. *The Random House Dictionary of the English Language.* (The Unabridged Edition) 1966, defines persona: "... the mask or façade presented to satisfy the demands of the situation or environment and not representing the inner personality of the individual." *Web-* *ster's Third New International Dictionary.* (Unabridged) 1970, defines persona as: ... "The social front, facade or mark an individual assumes to depict to the world at large the role in life that he is playing." The stainless steel stud aptly fits either definition.

The critical period is the twenty (20) minute waiting period. During this period nothing is to be eaten, drunk, or consumed by the subject. Because the breath of the subject is so important, no smoking is allowed. The stainless steel stud is affixed to Guy's tongue. It cannot be digested as food or drink. There is no evidence in the record to show how or why a stainless steel stud should be taken from Guy's tongue before or during the chemical breath test. Without any indication or evidence to indicate why the stainless steel stud might possibly be a "foreign substance" that would invalidate the test, the State has carried its burden as far as the alcohol test is concerned.

I would affirm the judgment of the trial court.