## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 14 2018, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John R. Watkins
Arata Law Firm
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert D. Mills,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 14, 2018

Court of Appeals Case No.
17A03-1709-CR-2251

Appeal from the DeKalb Superior Court.
The Honorable Kevin P. Wallace, Judge.
Trial Court Cause No.
17D01-1703-CM-237

**Friedlander, Senior Judge**

[1] In this interlocutory appeal, Robert Mills challenges the trial court's denial of his motion to suppress. We affirm.

[2] The sole issue on appeal is whether the trial court erred by denying Mills' motion to suppress the results of his breath test.

[3] On March 28, 2017, Mills was arrested for operating a motor vehicle while intoxicated and was transported to the Dekalb County Jail. The officer checked Mills' mouth for any foreign substances and did not find any. At the jail, the arresting officer and the jail staff removed everything from Mills' pockets and performed another mouth check. Subsequently, the officer escorted Mills through a locked door and down a secure hallway to a room where breath tests are administered. Mills was not in handcuffs. Although there is video surveillance of the breath test room, there is no surveillance of the hallway that leads to the room. A breath test was then administered to Mills.

[4] Mills was charged with operating a vehicle while intoxicated[1] and operating a vehicle with an unlawful alcohol concentration in blood or breath,[2] both Class C misdemeanors. Mills then filed a motion to suppress the results of the breath test. Following a hearing, the trial court denied Mills' motion. Mills now brings this interlocutory appeal.

[5] Mills contends the trial court erred by denying his motion to suppress the results of his breath test because the State failed to lay a sufficient foundation for their admission. Particularly, Mills argues that because he was not handcuffed and was very briefly behind the officer when entering the hallway that had no video

---

[1] Ind. Code § 9-30-5-2(a) (2001).

[2] Ind. Code § 9-30-5-1(a) (2001).

surveillance, the State could not show that he had not put anything into his mouth during the requisite fifteen-minute period.

[6] As the party offering the breath test results, the State has the burden of establishing the foundation for their admission. *Wolpert v. State*, 47 N.E.3d 1246 (Ind. Ct. App. 2015), *trans. denied*. In order for the results of a chemical breath test to be admissible, the test operator, test equipment, chemicals used in the test, and techniques used in the test must have been approved in accordance with the rules adopted by the Department of Toxicology. Ind. Code § 9-30-6-5(d) (2011). Thus, the State must set forth the proper procedure for administering a chemical breath test and show that the operator followed that procedure. *State v. Molnar*, 803 N.E.2d 261 (Ind. Ct. App. 2004).

[7] The sufficiency of a foundation for admitting the results of a breath test is a matter within the sound discretion of the trial court. *Stewart v. State*, 754 N.E.2d 608 (Ind. Ct. App. 2001). Thus, we will reverse a trial court's decision on the matter only if it is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Nivens v. State*, 832 N.E.2d 1134 (Ind. Ct. App. 2005).

[8] The procedure promulgated by the Department of Toxicology for administering a breathalyzer test and set forth in the administrative code states, in relevant part, "The person to be tested must not have put any foreign substance into his or her mouth or respiratory tract … within fifteen (15) minutes before the time the first breath sample is taken." 260 Ind. Admin. Code 2-4-2 (2014).

Here, the officer testified that he performed a "mouth check" on Mills and explained that this includes looking "inside the mouth of the individual" and having "him lift his tongue to verify that there's no foreign objects inside their mouth." Tr. p. 6. In addition, the officer and the jail staff removed everything from Mills' pockets when he arrived at the jail and performed another mouth check. Further, during viewing of the jail's surveillance video,[3] the officer testified as follows:

> Q: Where were you going at this point? You're going through a door and the Defendant is behind you. Where are you going?
>
> A: I was going to the intox [breath test] room.
>
> Q: Ok. Now how long was the Defendant behind you?
>
> A: Typically I just open the door for them right here and then I shut the door and walk, follow them down to the intox room.
>
> *******
>
> Q: Ok. So do you hold the door open for him and then he gets in front of you?
>
> A: Right and because it's a secured site, that door's always locked until a jailer in another room opens it. So I make sure that door locks behind after he goes through.
>
> Q: Alright, ok. So that's how you would do this basically any time?
>
> A: Yes.

---

[3] Although the jail's surveillance video was viewed and discussed during the suppression hearing, it was not admitted as an exhibit and was not included in the documents on appeal. The video showed Mills and the officer as they were entering the hallway to the breath test room and then when they were arriving at and while they were in the breath test room. The hallway itself had no video surveillance.

*****

Q:      But he walks in front of you from that point forward?

A:      Yes, I believe so.

*Id.* at 9-10.

Q:      I'm gonna ask you officer, was there any time you made any observation or any type of observation at all where you thought that he had a foreign, a foreign object in his mouth at any time?

A:      No.

Q:      And is it, you, did you follow the standard approved methods checklist?

A:      I did follow the approved method.

*Id.* at 12.

[10]    Mills attempts to make much of the fact that the surveillance video shows the officer walking in front of him to open the door to the hallway leading to the breath test room. He suggests that the officer remained in front of him through the doorway and down the hallway and, therefore, claims the officer was unable to observe if he put a foreign object in his mouth. In his reply brief, Mills further proposes that the State did not negate the possibility that he put his finger and/or his fingernail in his mouth in the hallway during this time. Yet, these arguments ignore the officer's testimony. The officer testified that, as he entered the hallway to go to the breath test room, Mills was behind him. He held the door open for Mills to enter the hallway, made sure the door was securely shut, and then followed Mills down the hallway. *See id.* at 9-10. The officer further testified that at no time did he observe a foreign object in Mills'

mouth. *Id.* at 12. The State met its burden of establishing the requisite procedure for admission of chemical breath test results. Thus, the trial court did not abuse its discretion in denying Mills' motion to suppress the results.

[11] Affirmed.

Riley, J., and Bailey, J., concur.