Steven A. FIELDS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 73A01–0306–CR–230.

Court of Appeals of Indiana.

April 28, 2004.

J.J. Paul, Voyles, Zahn, Paul, Hogan & Merriman, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Steven Fields appeals his conviction after a bench trial for operating a vehicle with a blood alcohol content greater than .08%, a Class C misdemeanor. We affirm.[1]

### Issues [2]

Fields raises the following two issues for our review, which we restate as the following:

1. Whether the trial court properly admitted evidence of the chemical breath test results; and
2. Whether the State presented sufficient evidence to support Fields's conviction.

### Facts and Procedural History

On June 25, 2002, Shelby County Sheriff's Deputy James Lacy stopped Fields in his vehicle for exceeding the posted speed limit. When he approached the vehicle, Deputy Lacy detected the odor of an alcoholic beverage. Deputy Lacy also observed that Fields had bloodshot eyes and his speech was slow and deliberate. Deputy Lacy asked Fields to step out of his vehicle, and Fields complied. Deputy Lacy then asked Fields whether he had anything in his mouth. Fields stated that he had chewing tobacco in his mouth. The chewing tobacco was a fine grind, similar to coffee grounds, and Fields testified that it was the same chewing tobacco he had in his mouth when he was consuming alcohol earlier that evening. Deputy Lacy asked Fields to remove the tobacco, so Fields put his finger in his mouth and "raked" the tobacco out through the side of his mouth. Fields was able to remove some, but not all, of the chewing tobacco from his mouth. This occurred at approximately 11:10 p.m. that evening.

Without doing a visual check of Fields's mouth, Deputy Lacy administered a portable breath test ("PBT"), which Fields failed. Deputy Lacy then asked Fields to perform three sobriety tests, all of which he failed. At approximately 11:35 p.m., about twenty-five minutes after Fields removed the chewing tobacco from his mouth, Deputy Lacy administered a chemical breath test, which reported Fields's blood alcohol content at .12%.

The State charged Fields with operating a vehicle while intoxicated endangering a person and operating a vehicle while intoxicated with a blood alcohol content greater than .08%. Fields filed a motion to suppress evidence of the breath test results, but after a hearing the trial court denied his motion. After a bench trial in which the parties incorporated the testimony from the suppression hearing into the trial record, the trial court found Fields guilty of operating a vehicle with a blood alcohol

---

1. We heard oral argument on this case on March 31, 2004, at Indiana State University in Terre Haute. We thank the attorneys for their capable advocacy and Indiana State University for their gracious reception.

2. Fields requests that we take judicial notice of the scientific fact that a twenty-minute deprivation period is a requirement to ensure a reliable chemical breath test. Because the regulations promulgated by the Department of Toxicology already require a twenty-minute deprivation period, we will not address this issue.

content greater than .08%.[3] Fields now appeals. Additional facts will be provided as necessary.

### Discussion and Decision

#### I. Admission of Evidence of Breath Test Results

##### A. Standard of Review

 Results of chemical breath tests are not admissible if the test operator, test equipment, chemicals used in the test, or techniques used in the test have not been approved in accordance with the rules adopted by the Department of Toxicology. Ind.Code § 9–30–6–5(d). The admission of chemical breath test results is left to the sound discretion of the trial court and will be reviewed for an abuse of discretion. *State v. Molnar*, 803 N.E.2d 261, 265 (Ind. Ct.App.2004). Because the State is the party offering the results of the breath test, it has the burden of establishing the foundation for admitting the results. *Id.* Therefore, the State must set forth the proper procedure for administering a chemical breath test and show that the operator followed that procedure. *Id.*

##### B. Twenty-minute Deprivation Period

The procedure for administering a chemical breath test, as promulgated by the Department of Toxicology in the Indiana Administrative Code, is described in relevant part, "The person to be tested must have had nothing to eat or drink, must not have put any foreign substance in his or her mouth or respiratory tract, and must not smoke within twenty (20) minutes prior to the time a breath sample is taken." Ind. Admin. Code tit. 260, r. 1.1–4–

8(1). Fields contends the procedure Deputy Lacy used in administering a chemical breath test to Fields was not proper because Fields had chewing tobacco residue remaining in his mouth when Deputy Lacy administered the chemical breath test. The State counters that the testing procedure approved by the Department of Toxicology required only that Fields not have actually *put* anything into his mouth during the twenty-minute observation period; whether Fields already had something in his mouth when the twenty-minute period began was irrelevant.

##### 1. Indiana Caselaw Interpreting the Meaning of "Put"

In *State v. Albright*, 632 N.E.2d 725 (Ind.1994), an officer administered a breath test to the defendant and subsequently noticed that the defendant was chewing on peanut fragments that were hidden in his mouth. The officer immediately administered a second breath test and then instructed the defendant to rinse out his mouth. After the defendant rinsed out his mouth, the officer waited over twenty minutes before administering a third breath test. The third test showed the defendant's blood alcohol content as .18%. Our supreme court, in upholding the procedure used by the officer, stated that a nearly identical rule, Indiana Administrative Code, title 260, r. 1.1–4–4 (1993),[4]

> [r]equire[d] a twenty minute waiting period prior to the administration of the Intoxilyzer test, *during which time the subject may not have had any foreign substance in his mouth.* This requirement relates to the reliability of the

---

**3.** All other charges against Fields were dropped, pursuant to an agreement between the parties, in exchange for Fields waiving his right to trial by jury.

**4.** The rule stated, "The person to be tested must have had nothing to eat or drink, must

not have put any foreign substance in his/her mouth or respiratory tract, and must not smoke within twenty (20) minutes prior to the time a breath sample is taken." Ind. Admin. Code tit. 260, r. 1.1–4–4 (1993).

results, because foreign substances may alter the blood-alcohol content reading. *Albright*, 632 N.E.2d at 725 (emphasis added).

In *Guy v. State*, 805 N.E.2d 835 (Ind.Ct. App.2004), an officer administered a chemical breath test to the defendant, who had a metal stud ("tongue ring") in her tongue at the time of the test. The defendant's test results indicated a .11% blood alcohol concentration, and the officer placed the defendant under arrest for operating while intoxicated. After the trial court denied the defendant's motion to suppress evidence of the test results, a panel of this court reversed the trial court's denial because the defendant had a foreign substance (the tongue ring) in her mouth during the breath test. *Id.* at 837. Relying on *Albright*, the panel concluded that "the word 'put' as it appears in 260 IAC 1.1–4–8(1) means 'present' and that a person to be tested must not have had any foreign substance present in his or her mouth within twenty minutes prior to the time a breath sample is taken." *Id.* at 838–39.

In *State v. Molnar*, 803 N.E.2d 261 (Ind. Ct.App.2004), an officer stopped a driver for speeding in his vehicle. The officer smelled alcohol and administered sobriety tests. The driver had chewing tobacco (which was finely ground) in his mouth at the time. The officer asked the driver to spit out his chewing tobacco. The driver complied, using his finger to "rake" out the tobacco. The officer then looked inside the driver's mouth and did not see any tobacco residue. After the twenty-minute observation period, the driver submitted to a chemical breath test, which reported his blood alcohol content as .12%. *Id.* at 262–63.

The *Molnar* court agreed with the State's argument in that case that 260 IAC 1.1–4–8 does not require that a person's mouth be free from foreign substances; rather, the regulation only requires that a person not *place* a foreign substance in his mouth up to twenty minutes prior to taking a breath test. *Molnar*, 803 N.E.2d at 265–66. The *Molnar* court also stated, however, that the twenty-minute rule "clearly contemplates that a substance 'put' in the mouth *will be removed* more than twenty minutes before the test is administered; what we do not conclude is that the rule requires all possible residue from the substance to be removed as well." *Id.* at 266, n. 1 (emphasis added). The *Molnar* court additionally stated the following: "This is not to say that a defendant would be precluded from presenting evidence at trial that a test result was actually skewed by residue remaining in his or her mouth. Here, no such evidence was presented." *Id.* at 266, n. 2. Because the defendant had removed the chewing tobacco from his mouth at least twenty minutes prior to taking the chemical breath test, the panel reversed the trial court's decision to suppress evidence of the test results. *Id.* at 267.

We respectfully disagree with *Molnar's* interpretation of 260 IAC 1.1–4–8(1) that the regulation only requires that a person not *place* any foreign substance in his mouth within the twenty-minute deprivation period. In light of our supreme court's holding in *Albright*, we conclude that 260 IAC 1.1–4–8(1) requires that a person must not have had any foreign substance in his mouth within twenty minutes prior to submitting to a chemical breath test.[5] Nevertheless, we do accept

---

**5.** In holding 260 IAC 1.1–4–8(1) requires that a person not have had any foreign substance in his mouth at least twenty minutes prior to submitting to a breath test, we do not hold a

person must remove objects from his mouth that are meant to be there, such as bridges, caps, artificial teeth, etc.

*Molnar's* reasoning as to why the twenty-minute deprivation period is important.

[T]he obvious reason for the twenty-minute rule is to prevent a foreign substance from affecting the breath test results. The Department of Toxicology determined that twenty minutes is a long enough period to sufficiently mitigate the contaminating effect of anything contained in a subject's mouth once the matter is removed, including any residue remaining in the mouth. Thus, we must rely on the expertise of the Department and trust that it decided twenty minutes is a sufficient waiting period to protect the integrity and accuracy of the test results. To hold otherwise would be to read a new meaning into the regulation and to essentially mandate that all subjects who have something in their mouths and are asked to remove the matter in preparation for a breath test to be administered rinse their mouths to remove any residue that might remain. This is not contemplated by the regulation and must not be imposed by judicial construction.

*Molnar,* 803 N.E.2d at 266–67 (footnotes omitted).

### 2. *Chewing Tobacco Residue in Mouth*

In the case at hand, the State satisfied its burden to show that the chemical breath test was properly administered. Deputy Lacy instructed Fields to remove the chewing tobacco from his mouth. Fields raked the chewing tobacco out of his mouth, and Deputy Lacy waited at least twenty minutes after Fields removed the tobacco from his mouth before administering the chemical breath test.

At the suppression hearing, Fields presented expert testimony that chewing tobacco present in the mouth during the twenty-minute deprivation period could affect the breath test results. However, Fields failed to present sufficient evidence that if tobacco residue did remain in Fields's mouth during the twenty-minute deprivation period, the amount of residue that remained affected the outcome of the chemical breath test. *See Molnar,* 803 N.E.2d at 266–67 (holding defendant failed to present sufficient evidence that tobacco residue that remained in defendant's mouth affected breath test results so as to render evidence of the results inadmissible where defendant removed chewing tobacco from his mouth at least twenty minutes prior to submitting to chemical breath test).

### C. Certification of DataMaster Machine

■ Fields next contends the certification of the DataMaster machine and the results of Fields's chemical breath test were inadmissible because the Department of Toxicology failed to certify the Data-Master machine in accordance with its own regulations. The Department of Toxicology sets the standards and regulations for the selection and certification of breath test equipment and chemicals. Ind.Code § 9–30–6–5(a)(2). Such certificates are admissible and constitute prima facie evidence that the equipment or chemical was inspected and approved by the Department of Toxicology and was in proper working condition on the date of the chemical breath test if the approval was given not more than 180 days before the chemical breath test. Ind.Code § 9–30–6–5(c)(2). Results of the chemical breath test are not admissible, however, if the test equipment or chemicals used have not been approved in accordance with the rules promulgated by the Department of Toxicology. Ind.Code § 9–30–6–5(d). According to the rules promulgated by the Department of Toxicology, chemical breath test equipment shall meet the following standards:

(1) Tests shall be made using known ethanol-water or ethanol-gas solutions, approved by the director of the state department of toxicology of Indiana University School of Medicine, to simulate an ethanol-breath solution.

(2) Such test results shall not deviate more than minus eight percent (–8%) from the known alcohol content of the ethanol-water or ethanol-gas solution, for example, 0.10% w/v solution of ethanol in water shall test within the range of 0.092% to 0.100%. No test result for the purpose of certification shall exceed the known ethanol content of the test solution.

(3) For the purpose of inspecting the breath test equipment, the analytical result shall be expressed to the third decimal place.

Ind. Admin. Code tit. 260, r. 1.1–2–1(e).

Fields argues that the Department of Toxicology failed in the following three ways to comply with their own regulations during its inspection of the DataMaster machine used to produce Fields's chemical breath test results: (1) the test solution used did not have a known alcohol content; (2) the test results exceeded the known ethanol content of the test solution; and (3) the results were not expressed to the third decimal place in some tests.

The State counters that Indiana Code section 9–30–6–5 stands for the proposition that once the proper foundation has been laid, the chemical test results are pre-sumed admissible. The State further argues that this presumption is rebuttable by the defendant, but any challenge to the reliability of the test goes to the weight of the evidence and not to its admissibility. *See State v. Rumple,* 723 N.E.2d 941, 946 n. 1 (Ind.Ct.App.2000) (holding trial court properly admitted into evidence certificate of inspection and compliance of DataMaster machine, where defendant attacked testing procedures used to inspect and approve machine, because certificate constituted prima facie evidence that inspection and approval complied with Department of Toxicology regulations and defendant's challenge to the contrary raised an issue of fact for the factfinder).

In response, Fields directs us to *Wray v. State,* 751 N.E.2d 679 (Ind.Ct.App.2001), *superseded by regulation on other grounds in State v. Lloyd,* 800 N.E.2d 196 (Ind.Ct. App.2003). In *Wray,* an officer arrested a driver after the driver's chemical breath test result exceeded the legal limit. At trial, the State sought to introduce the officer's breath test operator certification into evidence, but the defendant objected, arguing that the certification was hearsay and did not fall within the public records hearsay exception because it lacked trustworthiness since the officer testified he had not completed the breath test operator training promulgated by the Department of Toxicology. The State countered that the certificate was admissible under Indiana Code section 9–30–6–5(c).[6] The

---

**6.** The statute reads:

(c) Certified copies of certificates issued in accordance with rules adopted under subsection (a):

(1) are admissible in a proceeding under this chapter, IC 9–30–5, IC 9–30–9, or IC 9–30–15;

(2) constitute prima facie evidence that the equipment or chemical:

(A) was inspected and approved by the department of toxicology on the date specified on the certificate copy; and

(B) was in proper working condition on the date the breath test was administered if the date of approval is not more than one hundred eighty (180) days before the date of the breath test;

(3) constitute prima facie evidence of the approved technique for administering a breath test; and

trial court overruled the objection, and the defendant appealed. *Id.* at 681.

We did not address whether the certificate was inadmissible due to its untrustworthiness, but instead held the trial court abused its discretion in admitting the certificate under the statute because, according to the statute, only certificates issued in accordance with the procedures promulgated by the Department of Toxicology may be admitted into evidence. *Id.* at 683. Therefore, Fields argues that, under *Wray,* the trial court abused its discretion by admitting the certificate and the test results in this case because the Department of Toxicology did not follow their own procedures outlined in Title 260 of the Indiana Administrative Code.

*Wray,* however, is distinguishable from the case at hand. In *Wray,* there was *uncontradicted* evidence presented that the operator was not properly certified under the Department of Toxicology regulations. In the instant case, although Fields presented expert testimony that the Department of Toxicology did not follow its own regulations in inspecting and approving of the DataMaster machine used in this case, the State presented the testimony of Dr. Peter Method, the Associate Director of the Department of Toxicology. Dr. Method testified that the testing procedures used to inspect and approve of the DataMaster machine used for Fields's breath test did in fact comply with the testing procedures promulgated by the Department of Toxicology.

Furthermore, Fields did not present any evidence that the particular DataMaster machine used by Deputy Lacy to administer a breath test to Fields was not operating properly. Presenting one expert's testimony that the certification of the DataMaster machine may not have complied with the Department of Toxicology's regulations is not enough; otherwise, every breath test would be questionable. Instead, Fields was required to show more to rebut the presumption that the DataMaster machine was working properly. Therefore, the trial court did not abuse its discretion in admitting the certificate of inspection and compliance or the chemical breath test results into evidence.

## II. Sufficiency of the Evidence

■ Fields argues that the evidence presented at trial was insufficient to sustain his conviction. We disagree.

### A. Standard of Review

■ In reviewing sufficiency of the evidence claims, we do not reweigh the evidence or assess the credibility of witnesses. *Williams v. State,* 798 N.E.2d 457, 459 (Ind.Ct.App.2003). Instead, we review the evidence and reasonable inferences supporting the conviction to determine whether substantial evidence of probative value exists to support the judgment. *Id.*

> Indiana Code section 9–30–5–1(a) states:
> A person who operates a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol but less than fifteen-hundredths (0.15) gram of alcohol per ... two hundred ten (210) liters of the person's breath; commits a Class C misdemeanor.

The State presented sufficient evidence to support Fields's conviction. The evidence most favorable to the judgment showed that Deputy Lacy observed Fields travel-

---

(4) constitute prima facie evidence that the breath test operator was certified by the department of toxicology on the date specified on the certificate.

Ind.Code § 9–30–6–5(c).

ing in excess of the posted speed limit. When Deputy Lacy pulled Fields over, Fields smelled of alcohol and had blood-shot eyes. Fields failed three sobriety tests and a PBT that Deputy Lacy administered at the scene. At the station, Deputy Lacy, a certified breath test operator, administered a chemical breath test to Fields on a DataMaster machine that had been inspected and certified by the Department of Toxicology within 180 days of the test. The results of the chemical test indicated that Fields had a blood-alcohol content at .12%. Therefore, the State presented sufficient evidence to show that Fields operated a vehicle with a blood alcohol content greater than .08%.

### Conclusion

Because we hold the trial court did not abuse its discretion in admitting the chemical breath test results, and the State presented sufficient evidence to support Fields's conviction, we affirm the judgment of the trial court.

Affirmed.

BAKER, J., and RILEY, J., concur.