**Michael L. HADDIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 30A01–0311–CR–447.

Court of Appeals of Indiana.

Aug. 3, 2004.

---

**1058**

Frederick Vaiana, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Daniel Jason Kopp, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Michael L. Haddin (Haddin), appeals his conviction for Count II, operating with .08 to .14 blood alcohol content, a Class C misdemeanor, Ind.Code § 9–30–5–1.

We affirm.

### ISSUE

Haddin raises one issue on appeal, which we restate as follows: whether the trial court erred by admitting into evidence Haddin's chemical breath test results.

### FACTS AND PROCEDURAL HISTORY

On February 2, 2002, at approximately 1:50 a.m., Greenfield Police Officer Ryan Hancock (Officer Hancock), observed a vehicle speeding through a Marsh grocery store parking lot and turn onto the highway without signaling. Officer Hancock followed the vehicle for approximately two miles before pulling the vehicle over. After pulling the vehicle over, Officer Hancock immediately noticed that the driver had glassy eyes, slurred speech, and had an odor of an alcoholic beverage about him. Officer Hancock also observed a beer bottle stuffed between the front car seats. At that point, Officer Hancock requested the driver's car registration and driver's license and subsequently identified the driver as Haddin.

Officer Hancock then instructed Haddin to step out of the vehicle, so he could administer three field sobriety tests. Haddin failed all three sobriety tests, and as a result, Officer Hancock placed him in handcuffs, read him the Indiana Implied Consent Law,[1] and transported him to the Greenfield Police Department. While at the Greenfield Police Department, Haddin consented to a chemical breath test. In order to accurately perform the breath test, Officer Hancock asked Haddin to remove his chewing gum from his mouth. Haddin spent the next twenty minutes waiting in a room at the Greenfield Police Department while being recorded with a video camera. After the twenty-minute waiting period ended, Officer Hancock administered the breath test to Haddin. The results of the breath-test did not detect a foreign substance in Haddin's mouth and revealed that his blood alcohol level was at .10%, which was over the legal limit of .08%.

---

1. The Implied Consent Law states that, "[a] person who operates a vehicle impliedly consents to submit to the chemical test provisions

... as a condition of operating a vehicle in Indiana." *See* I.C. § 9–30–6–1.

On February 4, 2002, the State filed an information against Haddin charging him with Count I, operating while intoxicated, a Class A misdemeanor, I.C. § 9–30–5–2; and Count II, operating with .08 to .14 blood alcohol content, a Class C misdemeanor, I.C. § 9–30–5–1. On September 23, 2003, a jury trial was held. At the trial, Haddin moved the trial court to suppress the results of his certified breath test. In support of his motion, Haddin provided testimony of two toxicologists.

After considering the arguments from both sides, the trial court denied Haddin's motion to suppress and admitted the breath test results into evidence. At the conclusion of trial, the jury found Haddin not guilty on Count I, operating while intoxicated, a Class A misdemeanor, and guilty on Count II, operating with .08 to .14 blood alcohol content, a Class C misdemeanor.

On September 23, 2003, the trial court conducted a sentencing hearing. At the hearing, the trial court sentenced Haddin to 60 days in the Hancock County Jail, with all days suspended and 365 days of ADA probation. The trial court further ordered Haddin to complete a Mothers Against Drunk Driving Victim Impact Panel or twenty hours of community service. Additionally, the trial court ordered Haddin to pay $734.00 in fines. The trial court also suspended Haddin's license for thirty days, followed by a 180 day probationary license.

Haddin now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Haddin argues that the trial court abused its discretion by admitting into evidence the results of his chemical breath test. Specifically, Haddin claims that because Officer Hancock was not continuously present during the twenty-minute wait-ing period before the breath test, he did not follow the proper procedure. As a result, Haddin maintains that the results of the breath test should not have been admitted into evidence at trial.

Conversely, the State contends that Officer Hancock followed the proper procedure when he administered Haddin's breath test. Specifically, the State argues that the testing procedure approved by the Department of Toxicology did not require Officer Hancock to be continuously present during the twenty-minute waiting period. Consequently, the State maintains that the trial court did not abuse its discretion by admitting into evidence the results of Haddin's breath test.

We have held that the admission of chemical breath test results rests within the sound discretion of the trial court, which is reversible only for an abuse of discretion. *Daum v. State*, 625 N.E.2d 1296, 1297 (Ind.Ct.App.1993). The State, as the party offering the results of the chemical breath test, bears the burden of establishing a foundation for admitting the results. *Fields v. State*, 807 N.E.2d 106, 109 (Ind.Ct.App.2004). Therefore, the State must set forth the proper procedure for administering a chemical breath test and show that the operator followed the procedure. *Id.* Results of chemical breath tests are not admissible if the test operator, test equipment, chemicals used in the test, if any, or techniques used in the test have not been approved in accordance with the rules adopted by the Department of Toxicology. *See* I.C. § 9–30–6–5(d). The procedure for administering a chemical breath test, as promulgated by the Department of Toxicology, is described in relevant part as, "[t]he person to be tested must have had nothing to eat or drink, must not have put any foreign substance in his or her mouth or respiratory tract, and

must not smoke within twenty (20) minutes prior to the time a breath sample is taken." *Fields,* 807 N.E.2d at 109; Ind. Admin. Code tit. 260, r. 1.1–4–8(1).

 Haddin now contends that Officer Hancock did not follow the rules as promulgated by the Department of Toxicology when he administered the breath test. Particularly, Haddin asserts that Officer Hancock deviated from the proper procedure when he left the room where Haddin was located and did not continuously observe him during the twenty-minute waiting period.

Here, although the record indicates that Officer Hancock did not continuously observe Haddin during the twenty-minute waiting period, we have previously held that the procedure for administering breath tests does not require twenty minutes of continuous observation. *Daum,* 625 N.E.2d at 1297. Furthermore, the record indicates that Officer Hancock followed the rules adopted by the Department of Toxicology. *See* I.C. § 9–30–6–5(d). Specifically, Officer Hancock testified that he instructed Haddin to remove his chewing gum before he began the twenty-minute waiting period. The record also indicates that, after the twenty-minute waiting period, Officer Hancock inspected the breath test machine and found that it was in working order. Additionally, Officer Hancock testified that, after the breath test, the results revealed that there was no indication of a foreign substance in Haddin's mouth at the time of the test. As a result, we conclude that Officer Hancock followed the rules for administering the breath test as promulgated by the Department of Toxicology. *See* I.C. § 9–30–6–5(d).

Based upon all of the above, we find that the State established a foundation for admitting the results of the breath test by showing that Officer Hancock properly fol-

lowed the procedure promulgated by the Department of Toxicology. *Id.* at 109. Therefore, we conclude that the trial court properly admitted Haddin's breath test results into evidence. Consequently, we hold that the trial court did not abuse its discretion. *See Daum,* 625 N.E.2d at 1297.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in admitting the results of Haddin's chemical breath test into evidence.

Affirmed.

KIRSCH, C.J., and NAJAM, J., concur.