Joseph E. NAPIER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A01–0406–CR–237.

Court of Appeals of Indiana.

Jan. 6, 2005.

J.J. Paul, III, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, attorney for appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, attorneys for appellee.

## OPINION

BAKER, Judge.

This is a case of first impression, where we are called upon to decide the applicability of the rule set forth in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), as it relates to the State's method of establishing a proper evidentiary foundation regarding the admissibility of various documents that are used to prove the results of a criminal defendant's breath test. Appellant-defendant Joseph E. Napier appeals his conviction for Operating a Vehicle With a BAC of .08 Percent Or More,[1] a class C misdemeanor, claiming that his conviction may not stand because admitting breath test results by certification documents and a BAC DataMaster Evidence Ticket (BAC ticket) violates the Confrontation Clause[2] of the United States Constitution. Napier further claims that the admission of the breath test ticket violates the Indiana Rules of Evidence, inasmuch as that evidence is inadmissible hearsay.

We conclude that the admission of the breath test instrument certification documents at issue here did not violate the rule set forth in *Crawford.* And our legislature has provided that certificates regarding the inspection and compliance with relevant regulations of breath test instruments are admissible in prosecutions for operating a vehicle with a BAC of .08% or great-

---

1. Ind.Code § 9–30–5–1(a)(2).

2. U.S. Const. Amend. VI.

er. However, we also find that admitting into evidence the BAC ticket purporting to prove the breath test results—absent any "live" testimony that would establish a foundation for its admission—was improperly admitted. Thus, we reverse Napier's conviction on this basis.

### FACTS

The parties do not dispute that Napier was operating his vehicle on November 12, 2003, at 1:30 a.m. in Morgan County. Napier stipulated that the police officer that stopped him had probable cause to do so. Napier also did not dispute that there was probable cause to offer him a breath test.

While Napier was originally charged with Operating a Vehicle While Intoxicated (OVWI) as well as the BAC charge, the State subsequently dismissed the OVWI charge. During a bench trial that commenced on April 14, 2004, the State presented the certification of the breath test operator and the machine, and the breath test ticket showing Napier's BAC. The printout of the breath test showed that Napier's breath contained .14 grams of alcohol per 210 liters of breath. Neither the arresting officer nor any other "live" testimony was presented at trial.

During the course of the proceedings, the State sought to introduce the various certification materials contained in a document regarding the breath test machine that was used. Napier objected on the grounds that the admissibility of the document is controlled by the *Crawford* case and that "most hearsay exceptions contained in evidentiary rules and statutes are not permissible." Tr. p. 6. Napier went on to note that the fact that the particular machine was certified and satisfied certain accuracy requirements of regulations amounted to testimonial evidence. Napier further contended that he "can't cross-examine either the inspector's conclusions

that are contained here in the . . . report or the director of the Department of Toxicology or his representative concerning whether he should or should not have certified the document." Tr. p. 7.

Napier then offered maintenance records of the BAC DataMaster that was used in the breath test, along with records of a different DataMaster machine. Napier also objected to the admission of the instrument certification that the State offered on the grounds of hearsay and that *Crawford v. Washington* prohibits the admission of that evidence because it was testimonial and was not subject to cross-examination. Napier went on to object to the document's admissibility in accordance with this court's opinion in *Wray v. State*, 751 N.E.2d 679 (Ind.Ct.App.2001), inasmuch as Napier asserted that *Wray* provided a defendant with

> the ability to attack this document's facial statement with contrary evidence showing in fact that it may not have been inspected in accordance with the regulations. Since I can't cross-examine the person I can attack the document under *Wray*. And if I can attack it and show that the regulations weren't followed then this document is not admissible. And if it's not admissible the first foundation requirement of the State getting the test in at all regardless of result has not been met. And in fact, the . . . the hearsay objection dovetails with this simply because the State has not [sic] required to call an inspector or a representative of the department to testify about how the machine's set up and about these issues so I can't cross examine on any of these things.

Tr. p. 13.

When the State offered Exhibit Three into evidence, which was a certified document showing a "recertification" of the

breath test instrument, Napier's counsel lodged the following objection:

> [I]t's hearsay again. And the statutes permit the introduction of ... certifications that are within 180 days prior to the test, and don't say anything about subsequent certifications. And since we ... don't have an inspector here to examine him about what he went through with the certification process we don't know specifically how the director reached his conclusion on this one.

Tr. p. 17.

Finally, Napier objected to the printout of the breath test results that indicated a content of .14 grams of alcohol per 210 liters of breath upon the same grounds advanced that were advanced with respect to the other exhibits. Further, Napier's counsel remarked:

> This isn't a record that is kept in the course of directors inspections of machines. It ... isn't even a certified document. It is clearly hearsay. It says to the Court that at a certain time my client's breath test result is .14. I can't question it about what it might have been at a time earlier when he was driving. I can't ask it questions about what might have effected [sic] this.
>
> ...
>
> I think this is just a straight up hearsay document that is inadmissible under both Crawford, the rules, and the statute.

Tr. p. 19, 23. In the end, the trial court overruled Napier's objections and all exhibits offered by the State were admitted into evidence. Napier was found guilty as charged, and he now appeals.

## DISCUSSION AND DECISION

### I. The Confrontation Clause, Crawford and the Certification Documents

In addressing Napier's argument that the admission of the certified documents regarding the inspection and regulations pertaining to the breath test machine was erroneous, we note that for a number of years, our statutes have permitted the State to introduce hearsay documents at trial in order to establish an evidentiary foundation regarding the inspection and compliance with relevant regulations of breath test instruments. To be sure, Indiana Code section 9–30–6–5 permits the introduction of certificates of the director of the Department of Toxicology regarding the inspection and compliance issues. The result of such a process is that a breath test evidence ticket may be introduced against a defendant without the defendant's ability to question the reliability or accuracy of the methodology that is used to obtain such a result.

In *Crawford*, the previously well-settled rule announced in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) regarding the admissibility of hearsay evidence under the Sixth Amendment's Confrontation Clause was overturned. As was observed in *Crawford*, the *Roberts* court permitted the introduction of hearsay statements made by an unavailable declaration so long as the statement fell under a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." 124 S.Ct. at 1369. But with the rule announced in *Crawford*, it is now the law that when the prosecution seeks to introduce a "testimonial" out-of-court statement into evidence against a criminal defendant, the Confrontation Clause requires two showings: (1) that the witness who made the statement is unavailable; and (2) that the defendant had a prior opportunity to cross-examine the witness. *Id.* at 1374.

Here, the State contends that the certificates of inspection and compliance are not testimonial in nature and, therefore, do not

fall within the rule pronounced in *Crawford.* While the *Crawford* court did not precisely define the word "testimonial," a number of examples were noted:

> Ex parte in-court testimony or its functional equivalent … such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially … extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions … statements that were made under circumstances which would lead an objective witness to believe that the statement would be available for use at a later trial, were examples of evidence cited by the Supreme Court as being 'testimonial in nature.'

*Id.* at 1364.[3]

We note that prior to *Crawford,* our supreme court addressed a confrontation objection to the State's use of certification documents like the ones at issue here, where it found that such evidence could be used instead of live testimony. Specifically put, the court in *Platt v. State,* 589 N.E.2d 222 (Ind.1992), upheld the "admissibility of certified documents in lieu of live testimony to prove the machines are in working order and the operators are sufficiently trained to use them." *Id.* at 230 n. 7. It was further observed that:

> As we said earlier, for a statute to be declared unconstitutional, its fatal de-

fects must be clear. None are apparent in Ind.Code § 9–11–4–5 [now I.C. § 9–30–6–5]. Platt was not deprived of his confrontation rights. He had the opportunity to confront his accuser face-to-face. It was Deputy Ruch. The alternative would be to have a toxicologist in every courthouse every day giving testimony concerning his or her actual inspection of a particular Intoxilyzer machine, and his or her certification of the officer as a competent administrator of the test.

*Id.* at 230.

In light of the above, it is apparent that our supreme court has accepted the proposition that hearsay exceptions may be either judicially or statutorily created. Indeed, in *Mullins v. State,* 646 N.E.2d 40 (Ind.1995), it was held that "Section 9–30–6–15(a) creates, in fact, just such an exception, making breath-test results admissible in prosecutions under § 9–30–5." *Id.* at 48. This statute allows for the introduction of evidence of the alcohol level in an individual's blood as ascertained by a test of the blood, breath or urine. There is also a presumption that a test taken within a three-hour period accurately reflects a defendant's BAC level at the time of the offense.

Napier notes that this court reversed a defendant's conviction for operating a vehicle with a blood alcohol content of at least .10% when the uncontradicted evidence at trial established that the operator of the breath test machine was not properly cer-

---

**3.** The meaning of "testimonial" evidence has been addressed by this court in two very recent decisions: *Hammon v. State,* 809 N.E.2d 945 (Ind.Ct.App.2004), and *Fowler v. State,* 809 N.E.2d 960 (Ind.Ct.App.2004), both of which were handed down on the same day. These cases involved domestic battery convictions where the respective victims did not appear to testify, and the State proceeded with its prosecution on the basis of statements that the victims had supplied to the police that were admitted into evidence under the excited utterance exception to the hearsay rule. We recognized the *Crawford* court's determination that "testimonial" statements need not be under oath. It is apparent that our supreme court is also wrestling with the definition of "testimonial evidence," inasmuch as transfer was granted in both *Hammon* and *Fowler* on December 9, 2004.

tified under the Department of Toxicology regulations. *Wray v. State*, 751 N.E.2d 679, 683 (Ind.Ct.App.2001), *superseded by regulation on other grounds, State v. Lloyd*, 800 N.E.2d 196 (Ind.Ct.App.2003). We rejected the State's contention that harmless error resulted, and noted that the police officer's breath test operator certificate should have been deemed inadmissible under the circumstances. *Id.* at 684. Hence, we held that "[w]ithout evidence of Wray's blood or breath alcohol content pursuant to a chemical analysis, we are unable to affirm his conviction." *Id.*

In this case, the State introduced the Director of Toxicology's certificate, which stated that an inspection and tests were performed on the machine on a specified date, and that "[t]he instrument is in good operating condition satisfying the accuracy requirements set out by the State Department of Toxicology Regulations." Appellant's App. p. 93. The certificate specifies that: "[t]he original Letter of Certification, issued by the State Department of Toxicology, must be kept on file in the office of the Clerk of the Circuit Court and may be duplicated as needed for use in Court." *Id.* The result is that the evidentiary foundation is satisfied for the admissibility of the breath test evidence ticket, the certificate of inspection and compliance. Moreover, the certificate of inspection and compliance is proffered, admitted, and treated as prima facie evidence not only as to what it states regarding inspection and compliance, but as to the inference to be given to it by the trial court that the machine was in working order at the time of the breath test.

Even if it could be said that these types of certificates are akin to affidavits as Napier urges and, therefore, should be considered "testimonial" under *Crawford,* we do not see how the admission of these certificates would serve to preclude any meaningful cross-examination of the breath test evidence presented against him. Even though the inspector of the machine and the Director of Toxicology who executed the certification of inspection did not testify at trial, the information contained in the certificates does not pertain to the issue of guilt. Rather, that information simply goes to inspection and certification matters. *See Platt,* 589 N.E.2d at 230. In our view, a defendant's inability to cross-examine that information which is contained in the certificates is not similar to the type of evidence that was of concern to the *Crawford* court. Otherwise, the unreasonable alternative is to have a toxicologist in every court on a daily basis offering testimony about his inspection of a breathalyzer machine and the certification of the officer as a proper administrator of the breath test. Such a practice is obviously impractical. Additionally, as was observed in *Crawford:*

> The principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused. It was these practices that the Crown deployed in notorious treason cases like Raleigh's; that the Marian statutes invited; that English law's assertion of a right to confrontation was meant to prohibit; and that the founding-era rhetoric decried. The Sixth Amendment must be interpreted with this focus in mind.

*Id.* at 1363.

In considering this language, it is our view that the inspection and operator certifications are simply not included in the class of evidence that pertains to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial and to police interrogations" identified by the *Crawford* court as "the modern practices

with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* at 1374. That said, we reject Napier's contention that this evidence was improperly admitted simply because there was no "live testimony" offered by the State to establish an evidentiary foundation with regard to the breath test machine's certification and inspection. Hence, we cannot say that the trial court erred in admitting this evidence at trial. As a result, we conclude that the procedures permitted by our supreme court and our legislature for establishing a foundation for the admission of the certifications regarding the breath test machine and the regulations of the Toxicology Department do not run afoul of the rule announced in *Crawford* and the Confrontation Clause. Thus, Napier does not prevail on this issue.

## II. Admissibility Of Breath Test Results

In a related issue, Napier contends that his conviction must be reversed on the grounds that the printout of the evidence ticket was improperly admitted to prove the results of his breath test. As Napier argued above, he urges that the admission of this evidence to establish the existence of his blood alcohol level was inadmissible hearsay under our statutes, the court rules and *Crawford.*

### A. Standard of Review

■ In resolving this issue, we note that this court has determined that the results of chemical breath tests are not admissible if the test operator, test equipment, chemicals used in the test, or techniques used in the test have not been approved in accordance with the rules adopted by the Department of Toxicology. *Fields v. State,* 807 N.E.2d 106, 109 (Ind. Ct.App.2004), *trans. denied; see also* Ind. Code § 9–30–6–5(d). The admission of chemical breath test results is left to the

sound discretion of the trial court and will be reviewed for an abuse of discretion. *State v. Molnar,* 803 N.E.2d 261, 265 (Ind. Ct.App.2004). Because the State is the party offering the results of the breath test, it bears the burden of establishing the foundation for admitting the results. *Id.* Therefore, the State must set forth the proper procedure for administering a chemical breath test and show that the operator followed that procedure. *Id.*

### B. Napier's Claims

■ In addressing Napier's argument that the method in which the State sought to prove the breath test results was erroneous, we note that the Department of Toxicology sets the standards and regulations for the selection and certification of breath test equipment and chemicals. I.C. § 9–30–6–5(a)(2); *Fields,* 807 N.E.2d at 111. Results of a chemical breath test are not admissible, however, if the test equipment or chemicals used have not been approved in accordance with the rules promulgated by the Department of Toxicology. I.C § 9–30–6–5(d). In essence, for results of a breath test to be admissible, three foundational requirements are necessary: (1) the operator who administered the test must be certified by the Indiana University School of Medicine Department of Pharmacology and Toxicology; (2) the equipment used in the test must have been inspected and approved by the Department of Toxicology; and (3) the operator must have followed the procedures approved by the Department of Toxicology. *Lloyd,* 800 N.E.2d at 199. Hence, we held in *Lloyd* that the Deputy Sheriff's certification was admissible under the public records exception to the hearsay rule[4] when the above requirements were established, and the Deputy testified at trial that he

---

4. Ind. Evidence Rule 803(8).

had completed the requisite number of training hours. *Id.*

More recently, in *Haddin v. State*, 812 N.E.2d 1057 (Ind.Ct.App.2004), the defendant argued that the results of his chemical breath test were erroneously admitted into evidence because the arresting officer was not continuously present during the twenty minute waiting period before the breath test. Hence, he sought a reversal because the proper procedures had not been followed. *Id.* at 1059. At trial,

> Officer Hancock testified that he instructed Haddin to remove his chewing gum before he began the twenty-minute waiting period. The record also indicates that, after the twenty-minute waiting period, Officer Hancock inspected the breath test machine and found that it was in working order. Additionally, Officer Hancock testified that, after the breath test, the results revealed that there was no indication of a foreign substance in Haddin's mouth at the time of the test.

*Id.* at 1060. In light of this testimony, we concluded that the officer followed the rules for administering the breath test as promulgated by the Department of Toxicology, and we held the breath test results admissible. *Id.*

Unlike the circumstances in *Lloyd* and *Haddin*, the State, in this case, offered the DataMaster "evidence ticket" into evidence displaying the breath test results, absent any witness to present that exhibit. Hence, Napier was not only precluded from conducting any cross-examination with respect to the breath test operator's qualifications, he was not afforded the opportunity to question or attack the purported results of his breath test. Without that "live" testimony, Napier could not challenge those results. And the ability to challenge the breath test results directly pertains to the issue of guilt or innocence in this case.

We also note that the defendant in *Wray* was able to cross-examine the officer who administered the breath test and, because of that opportunity, the defendant was able to establish that the officer was not trained in most of the areas in which the regulations require breath test operators to be trained. *Wray*, 751 N.E.2d at 683. Hence, we were presented with uncontradicted evidence that the breath test operator was, in fact, not properly trained pursuant to the Department Of Toxicology's regulations. In these circumstances, we are of the view that the State's manner of proving Napier's breath test results failed because the State failed to lay an adequate evidentiary foundation for their admission into evidence. We must conclude, therefore, that the State's failure to present any "live testimony" at trial from the officer who conducted the tests runs afoul of the Confrontation Clause of the Sixth Amendment to the United States Constitution in light of *Crawford*. That is, the State failed to establish an adequate evidentiary foundation for the admission of the test results into evidence. Hence, we find that the trial court abused its discretion in admitting Napier's breath test results into evidence, and his conviction is reversed on this basis.

SHARPNACK, J., and FRIEDLANDER, J., concur.