# FOR PUBLICATION



**FILED**
Feb 11 2013, 8:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JOEL M. SCHUMM**
**BRIAN A. KARLE**, Certified Legal Intern
Appellate Clinic
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDWIN JONES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1204-CR-292 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Linda E. Brown, Judge
Cause No. 49F10-1005-CM-42961

**February 11, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Edwin Jones appeals his conviction and sentence for operating a vehicle while intoxicated as a class A misdemeanor.[1]  Jones raises three issues which we revise and restate as:

I.      Whether the trial court abused its discretion and violated Jones's confrontation rights by admitting a certificate of inspection asserting the accuracy of police testing equipment;

II.     Whether the court abused its discretion in ruling on certain evidentiary matters; and

III.    Whether the court erred in sentencing him.

We affirm.

FACTS

On May 29, 2010, at approximately 8:26 p.m., Indiana State Police Trooper Dan Madison was traveling northbound on Emerson Avenue and was stopped at a traffic light at Southeastern Avenue in Marion County, Indiana.  After the light turned green, Trooper Madison began to proceed through the intersection, noticed a car driven by Jones approaching from his right side on Southeastern, and had to brake and let Jones pass because Jones did not stop at the red light.  Jones passed "right in front" of Trooper Madison's police car and turned right to head northbound on Emerson, and Trooper Madison began to follow him.  Transcript at 38.  Trooper Madison observed Jones weaving in and out of his lane, crossing the center line twice.  He also observed Jones attempt to pass in a no-passing zone and drift onto the shoulder of the road, almost hitting parked vehicles.  When Jones attempted to pass in the no-passing zone, Trooper Madison

---

[1] Ind. Code § 9-30-5-2(b) (2004).

2

was forced to swerve into oncoming traffic with Jones to alert the drivers to avoid Jones's vehicle, and he then initiated a traffic stop of Jones.

As Trooper Madison approached the driver's side of the vehicle he noticed a strong odor of alcoholic beverages and that Jones's eyes were bloodshot and red. He asked Jones for his license and registration, and Jones slurred his speech when responding and "fumbled through to get his driver's license out." Id. at 42. Jones also could not locate his registration. Trooper Madison asked Jones to step out of the vehicle and Jones "swung himself out" turning both feet and "tumbled on the ground first and then stood up." Id. at 43. Trooper Madison led Jones to the rear of the vehicle and noticed Jones stagger and lean against the vehicle to steady his balance. Trooper Madison then administered three field sobriety tests including the One Leg Stand, the Nine Step Walk, and the Horizontal Gaze Nystagmus ("HGN") test, each of which Jones failed.

Based upon Jones's driving behaviors, Trooper Madison's observations of Jones, and Jones's failure of the field sobriety tests, Trooper Madison determined that he had probable cause to believe that Jones was intoxicated and he read Jones the Indiana Implied Consent Law and asked Jones to take a chemical breath test on a "BAC DataMaster" machine. State's Exhibit 4. Jones agreed, and Trooper Madison transported him to the Arresting Processing Center ("APC") where the closest certified breath testing device was located. While en route to the APC, Jones stated that "he should have listened to his friends" who did not want him to drive and asked Jones to stay at their

3

place. Transcript at 69. Trooper Madison administered the breath test to Jones resulting in a "subject sample" reading of .18. Id. at 65. Jones was placed under arrest.

## COURSE OF PROCEEDINGS

On May 30, 2010, the State charged Jones with Count I, operating a vehicle while intoxicated as a class A misdemeanor; and Count II, operating a vehicle above .15 as a class A misdemeanor. On March 26, 2012, the court held a jury trial and evidence consistent with the foregoing was presented. At trial, Trooper Madison testified that he was certified as a chemical test operator by the Indiana Department of Toxicology at the time Jones's chemical test was administered, and the State admitted State's Exhibit 2 without objection which was a list of police officers who were certified to administer chemical breath tests and contained Trooper Madison's name. The State then introduced as State's Exhibit 3 a certificate of inspection (the "Certification") stating that "[t]he instrument is in good operating condition, satisfying the accuracy requirements set out by State Department of Toxicology Regulations" as of May 3, 2010. State's Exhibit 3. Jones objected to the exhibit and asked preliminary questions of Trooper Madison demonstrating that he was not Michael F. Neerman, Ph.D., the Acting Director of the State Department of Toxicology, who was the signatory on the Certification, and Jones argued that the Certification was a violation of Jones's rights under the Confrontation Clause. The court overruled Jones's objection and admitted the Certification.

The State proceeded to question Trooper Madison regarding the procedures he used in administering the chemical test, in which at the outset the State requested that the court take judicial notice of the chemical test procedures enacted by Ind. Administrative

4

Rule 260 and the court did so.  The State proceeded to ask Trooper Madison a series of questions to determine whether he followed the procedures in administering Jones's test, and at one point Jones objected to the State's questions as leading.  The court overruled the objection, the State proceeded, and Jones entered a continuing objection to the State's questioning which the court noted and overruled.

Near the end of the State's direct examination of Trooper Madison, it introduced as State's Exhibit 5 the probable cause affidavit Trooper Madison completed "while [he] was waiting for the twenty (20) minutes at APC."  Id. at 72.  Jones objected to the exhibit as hearsay, the State responded that Trooper Madison "authenticated" the exhibit, and the court overruled Jones's objection.  Id. at 74.  The State did not question Trooper Madison regarding the contents of the probable cause affidavit, and it rested soon after the probable cause affidavit was admitted.

At the conclusion of the trial, the jury found Jones guilty as charged.  The court entered its judgment of conviction and merged Count II into Count I.  On April 18, 2012, the court held a sentencing hearing and sentenced Jones to 365 days with forty days executed to be served on home detention and 325 days suspended to probation.

ISSUES / ANALYSIS

I.

The first issue is whether the court abused its discretion and violated Jones's confrontation rights by admitting the Certification.  Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion.  Noojin v. State, 730 N.E.2d 672, 676 (Ind. 2000).  We reverse only where the decision is clearly against the

5

logic and effect of the facts and circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied. However, here because the issue is one of constitutional law, we review Jones's claim *de novo*. See King v. State, 877 N.E.2d 518, 521 (Ind. Ct. App. 2007) (constitutional challenges are reviewed *de novo*); see also U.S. v. Aguila-Urbay, 480 Fed. App'x 564, 566 (11th Cir. 2012) ("We review evidentiary rulings for an abuse of discretion. . . . However, we review '*de novo* the question of whether hearsay statements are testimonial for purposes of the Confrontation Clause.'") (quoting United States v. Caraballo, 595 F.3d 1214, 1226 (11th Cir. 2010)); United States v. Nettles, 476 F.3d 508, 517 (7th Cir. 2007) ("We review de novo a district court ruling that affects a defendant's Sixth Amendment rights.").

The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." Pendergrass v. State, 913 N.E.2d 703, 705 (Ind. 2009) (citing Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004)), cert. denied, 130 S. Ct. 3409 (2010); see also Davis v. Washington, 547 U.S. 813, 821-822, 126 S. Ct. 2266 (2006). "Where testimonial statements are at issue, the only indicium of

6

reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford, 541 U.S. at 68-69, 124 S. Ct. at 1374.

Jones argues that the Certification is a testimonial statement implicating his rights under the Confrontation Clause and that this court's previous statements that such certifications are nontestimonial are incorrect, noting in particular that our holding in Ramirez v. State, 928 N.E.2d 214 (Ind. Ct. App. 2010), trans. denied, is the only decision which has considered the issue since the United States Supreme Court's opinion in Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S. Ct. 2527 (2009), and that at this stage "it is appropriate to reconsider this line of cases in light of" Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011). Appellant's Brief at 4. Jones argues that the Certification is testimonial because it "represents 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" Id. at 10 (quoting Crawford, 541 U.S. at 52, 124 S. Ct. at 1364), and he directs us to Ind. Code § 9-30-6-5, the statute which requires the certification, and in particular subsection (c) which states: "Certified copies of certificates . . . are admissible in a proceeding under this chapter, IC 9-30-5 . . . ." Id. at 9-10. Jones argues that "[p]roceedings under 'IC 9-30-5' are criminal prosecutions of individuals charged with OVWI, the very proceedings to which [he] was subjected," and that thus "the analyst who signs the Certification is on notice that the Certification constitutes *prima facie evidence* in a criminal proceeding for OVWI and that the results of a chemical test . . . cannot be admitted . . . unless the analyst certifies that

7

the instrument is in working order." Id. Jones also argues that the Certification is a "formal document" and that accordingly, under Bullcoming, it is testimonial. Id. at 11.

The State argues that "[t]his Court has repeatedly held that such certifications are not testimonial" and that nothing in Bullcoming alters this analysis. Appellee's Brief at 6. The State argues that certifications like the one at issue here "are qualitatively different from the types of hearsay that the Supreme Court has described as testimonial" because they "are not prepared with reference to any particular case or any particular defendant; rather, they serve a ministerial or administrative function and are prepared in a routine matter without regard to whether they are ever used in any case, much less any particular case." Id. at 7. The State argues that the United States Supreme Court in Bullcoming reiterated the holding of Melendez-Diaz and underscored that laboratory test results are testimonial in nature, and it did not alter the definition of what is testimonial or cast doubt on this court's previous decisions. The State also argues that any error is harmless because the State did not need to prove any particular blood alcohol level and it presented overwhelming evidence of intoxication.

In Ramirez, this court addressed whether certificates of inspection are testimonial thus implicating the Confrontation Clause. We began by observing that by Indiana statute chemical breath test results are inadmissible "unless the test operator, test equipment, chemicals used in the test, and test techniques have been approved in accordance with the rules promulgated by the Indiana University School of Medicine Department of Pharmacology and Toxicology." 928 N.E.2d at 216 (citing Ind. Code § 9-30-6-5(d) (subsequently amended by Pub. L. No. 158-2011, § 2 (eff. July 1, 2011)). We

8

noted in particular that the person administering the test must be certified, the equipment must have been inspected and approved by the Department of Toxicology, and the operator must follow the procedures approved, and we observed that "Certificates issued by the Department of Toxicology indicating that breath test equipment is in good operating condition are admissible at trial and constitute prima facie evidence that the equipment (1) was inspected and approved by the Department of Toxicology and (2) was in proper working condition on the date the breath test was administered if the date of approval was not more than 180 days before the date of the test." Id. (citing Ind. Code § 9-30-6-5(c)). We also observed that Ind. Code § 9-30-6-5(b) mandates that such certificates "shall be sent to the clerk of the circuit court in each county where the breath test operator, equipment, or chemicals are used to administer breath tests." Id. at 216-217 (quotations omitted).

In addressing whether such certificates are testimonial, we observed that Crawford did not "provide a comprehensive definition of 'testimonial,'" and in the years following Crawford this court has addressed this issue and "routinely concluded that the certificates are nontestimonial."[2] Id. at 217. We summarized three rationales behind those decisions and articulated them as follows:

> (1) the certificates are not prepared at a judicial proceeding or during police interrogation[;] (2) the certificates are not sworn affidavits and do not contain formalized testimonial materials[;] and (3) although inspection certificates are prepared for purposes of criminal litigation, certification of

---

[2] The Ramirez court provided the following citation for this proposition: "See Johnson v. State, 879 N.E.2d 649, 660 (Ind. Ct. App. 2008); Jarrell v. State, 852 N.E.2d 1022, 1026 (Ind. Ct. App. 2006); Rembusch v. State, 836 N.E.2d 979, 982 (Ind. Ct. App. 2005), reh'g denied, trans. denied; Napier v. State, 820 N.E.2d 144, 150 (Ind. Ct. App. 2005), modified in part on reh'g, 827 N.E.2d 565 (Ind. Ct. App. 2005), trans. denied, cert. denied, 546 U.S. 1215, 126 S. Ct. 1437, 164 L.Ed.2d 134 (2006)."

> breath-test machines is removed from the direct investigation or direct proof of whether any particular defendant has operated a vehicle while intoxicated; the certificates are not prepared in anticipation of litigation in any particular case or with respect to implicating any specific defendant.

Id. at 217-218 (citations and quotations omitted). We also observed that "[o]ur holdings were substantially in accord with the decisions of other jurisdictions." Id. at 218.

As acknowledged by the parties, the Ramirez decision was handed down following the U.S. Supreme Court's pronouncements in Melendez-Diaz which "elaborated on the meaning of 'testimonial' within the realm of forensic chemical testing." Id. In Melendez-Diaz, the State of Massachusetts introduced documents which were sworn to by state laboratory analysts before a notary public indicating that a substance seized from the defendant was cocaine of a certain weight. Id. The Court held that such documents were testimonial in nature triggering Sixth Amendment protections because they were "plainly" affidavits, or sworn declarations of fact, "which were admitted to prove that the substance was cocaine, and the documents were "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' and they were in fact prepared for the sole purpose of providing evidence in a subsequent prosecution." Id. (quoting Melendez-Diaz, 557 U.S. at 311, 129 S. Ct. at 2532 (quoting Crawford, 541 U.S. at 52, 124 S. Ct. at 1364))).

We then turned our attention to specific language in Melendez-Diaz which addressed concerns similar to those at issue in Ramirez, noting that the dissent in Melendez-Diaz expressed concern for the rule of that case as follows:

10

Consider the independent contractor who has calibrated the testing machine. At least in a routine case, where the machine's result appears unmistakable, that result's accuracy depends entirely on the machine's calibration. The calibration, in turn, can be proved only by the contractor's certification that he or she did the job properly. That certification appears to be a testimonial statement under the Court's definition: It is a formal, out-of-court statement, offered for the truth of the matter asserted, and made for the purpose of later prosecution. It is not clear, under the Court's ruling, why the independent contractor is not also an analyst.

Id. at 218-219 (quoting Melendez-Diaz, 557 U.S. at 333, 129 S. Ct. at 2545 (Kennedy, J.,

dissenting)). The majority of the Court responded:

Contrary to the dissent's suggestion, we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, *or accuracy of the testing device*, must appear in person as part of the prosecution's case. . . . *Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records*.

Id. at 219 (quoting Melendez-Diaz, 557 U.S. at 311 n.1, 129 S. Ct. at 2532 n.1)

(emphases added).

We held that Melendez-Diaz did not disturb this court's prior precedent and that,

in particular, the exchange cited above "appears to leave our prior decisions intact." Id.

We noted that although the statement that documents certifying equipment maintenance

"may well qualify as nontestimonial" is "not decisive," it "at a minimum [] leaves the

question unresolved and demands the same type of scrutiny that we have undertaken

since Crawford" and as such our prior precedents remain valid. Id. In so holding, we

stated as follows:

The certificates do not comprise ex parte in-court testimony or its functional equivalent. They are not formalized testimonial materials like sworn affidavits. Moreover, while the certificates contemplate use in criminal trials, they are completed in advance of any specific alleged drunk-

11

driving incident and breath test administration and are not created for the prosecution of any particular defendant.

Id.

To the extent that Jones suggests Bullcoming changes matters, we observe that in that case, the Court began by reiterating its holding in Melendez-Diaz that "a forensic laboratory report stating that a suspect substance was cocaine ranked as testimonial for purposes of the Sixth Amendment's Confrontation Clause" because "[t]he report had been created specifically to serve as evidence in a criminal proceeding" and that "[a]bsent stipulation . . . the prosecution may not introduce such a report without offering a live witness competent to testify to the truth of the statements made in the report." 131 S. Ct. at 2709. The Court noted that in the case before it, defendant Bullcoming was arrested for driving while intoxicated, and evidence was submitted in the form of a "forensic laboratory report certifying that [his] blood-alcohol concentration was well above the threshold for aggravated DWI." 131 S. Ct. at 2709. Below, the New Mexico Supreme Court had ruled that Melendez-Diaz was satisfied when, at trial, "the State called another analyst who was familiar with the laboratory's testing procedures, but had neither participated in nor observed the test on Bullcoming's blood sample," holding that "although the blood-alcohol analysis was 'testimonial,' the Confrontation Clause did not require the certifying analyst's in-court testimony" and that "live testimony of another analyst satisfied the constitutional requirements." Id. at 2709-2710. The U.S. Supreme Court held that such "surrogate testimony . . . does not meet the constitutional requirement" and that "[t]he accused's right is to be confronted with the analyst who

12

made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." Id. at 2710.

In so holding, the Court reasoned that such testimony would be akin to allowing an officer other than the one who observed factual events and recorded them in a police report to testify to such facts "so long as that officer was equipped to testify about any technology the observing officer deployed and the police department's standard operating procedures," which, the Court has stated "emphatically" is not allowable. Id. at 2714-2715. The Court went on to reiterate that in Melendez-Diaz, it held that "[t]he 'certificates of analysis' prepared by the analysts who tested the evidence . . . were 'incontrovertibly . . . affirmation[s] made for the purpose of establishing or proving some fact' *in a criminal proceeding*." Id. at 2716 (emphasis added). It noted that the State's arguments in that case "fare[] no better here" than in Melendez-Diaz, because "[a] document created solely for an 'evidentiary purpose,' . . . made in aid of a police investigation, ranks as testimonial," and it addressed an argument advanced by the State that the report at issue in Bullcoming was "unsworn," rather than "sworn to before a notary public" as was the case in Melendez-Diaz, holding that the document was still considered formal and was an unavailing distinction which did not "remove [the certificate] from Confrontation Clause governance" because such a rule "would make the right to confrontation easily erasable." Id. at 2717.

Thus, the Bullcoming Court was not concerned with whether the certificate of analysis was sworn or unsworn but rather examined the nature of the document, noting that it was a formal document created for the purpose of establishing or proving a fact in

a criminal proceeding. To that end, we observe that in Ramirez we were similarly concerned with the document's nature and not its status as sworn or unsworn. Indeed, in our holding we stated that documents such as the Certification were not testimonial because they "are not formalized testimonial materials *like* sworn affidavits." 928 N.E.2d at 219 (emphasis added). Bullcoming observed, and we agree, that the fact that an affidavit is not sworn will not remove protections granted by the Confrontation Clause, but we disagree with Jones's characterization of the Certification as an affidavit. Indeed, as we observed in Ramirez, the Court in Melendez-Diaz defined an affidavit as a "declaration of *facts* written down and sworn to by the declarant before an officer authorized to administer oaths." Id. at 218 (quoting Melendez-Diaz, 557 U.S. at 310, 129 S. Ct. at 2532 (quoting BLACK'S LAW DICTIONARY 62 (8th ed. 2004))) (emphasis added). Also, this court has defined an affidavit as "a written statement of fact which is sworn to *as the truth* before an authorized officer." In re Paternity of H.R.M., 864 N.E.2d 442, 448 (Ind. Ct. App. 2007) (quoting Jordan v. Deery, 609 N.E.2d 1104, 1110 (Ind. 1993)) (emphasis added). Here, the Certification was offered merely to satisfy a statutory requirement that the breath test equipment was "in good operating condition, satisfying the accuracy requirements set out by the State Department of Toxicology Regulations," as part of the evidentiary foundation for introducing the results as State's Exhibit 4. State's Exhibit 3; see also Ind. Code § 9-30-6-5.

Also, similar to Jones's arguments based on Bullcoming and the second rationale from Ramirez, Jones scrutinizes the third rationale and argues that the U.S. Supreme Court has rejected this rationale in Williams v. Illinois, 132 S. Ct. 2221 (2012),

specifically arguing that a majority of the justices agree "that a 'targeted' individual is *not* required to invoke the Confrontation Clause." Appellant's Brief at 15 n.6. Jones directs us to an exchange in Williams in which a plurality of the Court stated:[3]

> The abuses that the Court has identified as prompting the adoption of the Confrontation Clause shared the following two characteristics: (a) they involved out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct and (b) they involved formalized statements such as affidavits, depositions, prior testimony, or confessions.

132 S. Ct. at 2242. Justice Kagan authored a dissent, joined by Justices Scalia, Ginsburg, and Sotomayor, which disagreed with the Court's language of "accusing a targeted individual:"

> As its first stab, the plurality states that the [document at issue, which was a DNA report] was "not prepared for the primary purpose of accusing a targeted individual." *Ante*, at 2243. Where that test comes from is anyone's guess. Justice THOMAS rightly shows that it derives neither from the text nor from the history of the Confrontation Clause. See *ante*, at 2263 (opinion concurring in judgment). And it has no basis in our precedents. We have previously asked whether a statement was made for the primary purpose of establishing "past events potentially relevant to later criminal prosecution"—in other words, for the purpose of providing evidence. Davis, 547 U.S., at 822, 126 S. Ct. 2266; see also Bullcoming, 564 U.S., at ——, 131 S. Ct., at 2716-2717; [Michigan v. ]Bryant, 562 U.S., at ——, ——, 131 S. Ct. [1143], at 1157, 1165[ (2011)]; Melendez-Diaz, 557 U.S., at 310-311, 129 S. Ct. 2527; Crawford, 541 U.S., at 51-52, 124 S. Ct. 1354. None of our cases has ever suggested that, in addition, the statement must be meant to accuse a previously identified individual; indeed, in Melendez-Diaz, we rejected a related argument that laboratory "analysts are not subject to confrontation because they are not 'accusatory' witnesses." 557 U.S., at 313, 129 S. Ct. 2527.

---

[3] In Williams, Justice Alito authored a plurality decision and announced the Court's judgment and was joined by Chief Justice Roberts, Justice Breyer, and Justice Kennedy. 132 S. Ct. at 2227. Justice Thomas concurred in the judgment. Id.

15

Id. at 2273-2274 (Kagan, J., dissenting). Jones argues that the third Ramirez rationale is substantially similar to the "accusatory" test expressed by the plurality, and the fact that three justices agreed with the views expressed in Justice Kagan's dissent, plus the fact that Justice Thomas did not join with the plurality's reasoning regarding the "accusatory" test, indicates that a majority of the U.S. Supreme Court disagree with this rationale as valid Confrontation Clause jurisprudence.

As noted above, the third rationale provided in Ramirez as to why certificates of inspection including the Certification at issue in this case are nontestimonial was stated as:

> although inspection certificates are prepared for purposes of criminal litigation, certification of breath-test machines is removed from the direct investigation or direct proof of whether any particular defendant has operated a vehicle while intoxicated; the certificates are not prepared in anticipation of litigation in any particular case or with respect to implicating any specific defendant.

928 N.E.2d at 218 (quotations omitted). To the extent that the wording of this rationale resembles the "accusatory" test set forth by the plurality opinion in Williams, we are inclined to agree that any rationale which relies upon the fact that a piece of evidence does not target a particular defendant as a basis for determining that such evidence is nontestimonial appears to be disapproved of by a majority of the Justices of the U.S. Supreme Court.

However, we find that any confusion with the wording of the third Ramirez rationale indicating that it contains an "accusatory" element can be rectified by examining other statements by the Court regarding a statement's "primary purpose." As noted above, the Court held in Davis that statements are "testimonial" where "the primary

16

purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." 547 U.S. at 822, 126 S. Ct. at 2274. Also, in <u>Bryant</u> the Court stated:

> Whether formal or informal, out-of-court statements can evade the basic objective of the Confrontation Clause, which is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial. When, as in <u>Davis</u>, the primary purpose of an interrogation is to respond to an "ongoing emergency," its purpose is not to create a record for trial and thus is not within the scope of the Clause. But there may be other circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony. In making the primary purpose determination, standard rules of hearsay, designed to identify some statements as reliable, will be relevant. Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause.

131 S. Ct. at 1155.

Here, the Certification's relevance is merely a creature of statute aimed at establishing the reliability of chemical breath test analysis results as a foundational requirement for submitting breath test *results*, which, we note, is a safeguard the legislature put in place for the benefit of the defendant.[4] To that end, we note that the status of breath testing equipment cannot be termed a past event relevant to Jones's prosecution. Put another way, if Ind. Code § 9-30-6-5 did not exist, the State would not have a need to submit the Certification and could simply introduce the results of the breath test, subject, of course, to the defendant's Confrontation Clause protections. We

---

[4] We observe that, as a policy matter, were we to agree with Jones and find that certificates of inspection such as the Certification at issue here were testimonial evidence and require that the person who inspected the breath test equipment testify at every OWI trial before breath test results may be admitted, the legislature could respond by removing the statutory requirements currently in place which ensure the accuracy of such equipment, judging it as an undue burden on law enforcement.

17

also note that hearsay exceptions are not even relevant in this matter because Ind. Code § 9-30-6-5(c) specifically provides that such certificates of inspection are admissible to establish that certain breath test equipment is in good operating condition.

Thus, based upon Williams and other recent statements from the U.S. Supreme Court, we reframe the third rationale articulated in Ramirez to provide that although certificates of inspection are kept on file by the court clerk and may be duplicated for use in court, their primary purpose is to ensure that certain breath test equipment is in good operating condition in compliance with Ind. Code § 9-30-6-5. However, we reaffirm our prior precedents and conclude that the Certification was nontestimonial and that the court did not err in admitting it.

Moreover, we agree with the State that any such error regarding the admission of the Certification and the attendant breath analysis was harmless. As noted by the State, it did not have to prove a certain blood alcohol level to sustain Jones's conviction, and it elicited from Trooper Madison extensive and explicit testimony demonstrating that Jones operated a vehicle while intoxicated. Trooper Madison identified multiple instances in which Jones displayed unsafe driving behavior consistent with a person being intoxicated including nearly hitting Trooper Madison's police car, weaving and twice crossing the center line, passing in a no-passing zone, and nearly hitting parked vehicles parked on the shoulder of the road. Trooper Madison noted that he smelled alcohol when he encountered Jones, that Jones's eyes were red and bloodshot, that Jones fumbled with his license and could not locate his registration, that when Jones exited his vehicle he displayed a lack of balance, that Jones staggered as he walked and leaned against his

18

vehicle to steady himself, and that Jones failed three field sobriety tests. See Timberlake v. State, 690 N.E.2d 243, 255 (Ind. 1997) (holding that "[e]ven if a trial court errs in a ruling on the admissibility of evidence, we will reverse only if the error is inconsistent with substantial justice" and that the error was harmless), reh'g denied.

II.

The second issue is whether the court abused its discretion in ruling on certain evidentiary matters. As noted above, this court reviews evidentiary rulings for an abuse of discretion, and such rulings are subject to harmless error analysis. Noojin, 730 N.E.2d at 676; Fox, 717 N.E.2d at 966. Jones argues that the court abused its discretion when it: (A) admitted the probable cause affidavit; and (B) allowed the State to use leading questions. We address each of Jones's arguments separately.

A.      Probable Cause Affidavit

Jones argues that the court erred in allowing the State to admit the probable cause affidavit because it constitutes inadmissible hearsay. Jones notes that the State responded to his objection by stating that Trooper Madison "authenticated" the document and specifically points to the following colloquy:

| [The State]: | Your Honor, at this time the State moves to admit State's Exhibit 5 into evidence. |
|---|---|
| THE COURT: | Any Objection? |
| [Jones's Counsel]: | Yes, Judge, the Defense objects; this is hearsay. |
| [The State]: | Your Honor, the trooper is the individual who compiled this document; he filled it out. His testimony you've heard prior that he filled it out while he was waiting at the APC waiting with [Jones]. So we do feel that he has authenticated it. |

19

[Jones's Counsel]: It's still hearsay. . . . It doesn't matter whether he's present here today; there's no, no foundation has been laid for any exception to the general rule. . . .

THE COURT: . . . [A]ny response to that?

[The State]: Your Honor we do feel that the witness, his individual documents it's all authenticated. His testimony does mirror what is noted in the Probable Cause Affidavit; and we do feel that this is admissible.

Transcript at 73-74; Appellant's Brief at 16-17. Jones argues that a review of the transcript reveals that the probable cause affidavit was offered to prove the truth of the facts contained therein and "[a]uthentication" is not a hearsay exception. Appellant's Brief at 17 (citing Ind. Evidence Rule 803).

The State argues that although it agrees that "authentication" is not a valid response to a hearsay objection, this court may affirm an evidentiary ruling on any basis apparent in the record and here the probable cause affidavit was properly admitted as a present sense impression under Ind. Evidence Rule 803(1). The State argues that this hearsay exception applies because Trooper Madison "testified that he filled out the probable cause affidavit while he was waiting the prescribed twenty-minute period before performing the chemical breath test on [Jones] at the APC and finished the last part pertaining to the test results before he left the APC." Appellee's Brief at 18. The State argues that any error was at most harmless, noting that the "probable cause affidavit was merely cumulative of the officer's testimony describing the stop, his observations during it, the failed sobriety tests, the results of the breath test, and [Jones's] admissions" and

20

that the State presented overwhelming independent evidence that Jones operated a vehicle while intoxicated "such that there is no possibility the probable cause affidavit contributed to the verdict." Id. at 18-19.

In his reply brief, Jones argues that the State cites no case law for admitting a probable cause affidavit under the present sense impression hearsay exception and that it appears to be an issue of first impression, that Trooper Madison indicated in his testimony he did not fill out the probable cause affidavit until about an hour subsequent to his initial interactions with Jones and thus had ample time to reflect on the events, and that Ind. Evidence Rule 803(8), the public records hearsay exception, specifically states that probable cause affidavits do not qualify under the rule and accordingly "[r]eading Rule 803 as a whole, it would make little sense to affirmatively exclude probable cause affidavits from one exception, only to allow them to be admitted under another."[5] Appellant's Reply Brief at 14-15 n.8.

Here, at the end of the State's direct examination of Trooper Madison, it introduced and the court admitted over objection the probable cause affidavit. Even assuming that the probable cause affidavit was offered for the truth and the State's reply at trial that Trooper Madison authenticated the document was not a viable reply, we find any error in its admission was harmless. As noted above, Trooper Madison's testimony alone demonstrated that Jones operated a vehicle while intoxicated. He identified specific instances of unsafe driving behavior displayed by Jones, noted that he smelled

---

[5] Ind. Evidence Rule 803(8) provides in relevant part that "[t]he following are not within this exception to the hearsay rule: (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case . . . ."

alcohol and that Jones displayed signs of intoxication including red and bloodshot eyes and a lack of balance, and that Jones failed three field sobriety tests.

The evidence presented at trial was overwhelming and, indeed, Jones does not identify a single fact that the State admitted into evidence via the probable cause affidavit which was not cumulative of evidence admitted via Trooper Madison's lawful testimony. To the extent that the court erred in admitting the probable cause affidavit, it tends "only to disclose a fact proven by other properly admitted evidence," and accordingly any error is harmless. Cornett v. State, 536 N.E .2d 501, 506 (Ind. 1989).

B.      Leading Questions

Indiana Evidence Rule 611(c) provides: "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony." A leading question is one that suggests the desired answer to the witness. Williams v. State, 733 N.E.2d 919, 922 (Ind. 2000). The use of leading questions is limited in order to prevent the substitution of the attorney's language for the thoughts of the witness as to material facts in dispute. Id. The trial court is afforded wide discretion in allowing leading questions, and the court's decision will be reversed only for an abuse of discretion. Bussey v. State, 536 N.E.2d 1027, 1029 (Ind. 1989).

Jones argues that the court erred when it allowed the State to use leading questions during its direct examination of Trooper Madison which were objected to by Jones. Jones highlights examples including "(1) 'Did you observe [Jones] for (20) minutes prior to the administering of the test?'; (2) 'When you began the chemical test was the green Led light on the instrument displayed [sic] lit?'; (3) 'When the please blow message

22

appeared in the display, did you place a new mouth piece in the breath tube and instruct the defendant to blow into it?'" Appellant's Brief at 17-18. Jones argues that following his objection the court did not explain why leading questions were appropriate and the State made no attempt to question Trooper Madison in a non-leading fashion.

The State argues that the court did not abuse its discretion in allowing the State's line of questioning because Trooper Madison "had already testified that he was certified to perform breath tests and had followed the established procedures for a breath test, and the court had taken judicial notice of what those procedures were." Appellee's Brief at 21. The State argues that regardless, Jones "has not and cannot show any 'substantial injury' and thus any error is harmless," noting specifically that Jones's counsel in his closing argument "never argued that the test had been performed improperly." Id. at 21-22. The State also notes in arguing harmless error that "the breath test evidence was unnecessary to sustain a conviction for operating while intoxicated . . . ." Id. at 22.

At trial, the State elicited testimony from Trooper Madison, and Jones objected as follows:

[The Prosecutor]: Trooper Madison, what time did you administer the chemical test to the defendant?

A: It was after the twenty (20) minutes once I transported him to the APC. My twenty (20) minutes started once we walked into the blood test room and sat down. I used the clock on the instrument.

[The Prosecutor]: Prior to administering the test, did you inspect [Jones's] mouth for any foreign objects?

A: Yes.

[The Prosecutor]: Did you find anything in [Jones's] mouth?

23

A: No.

[The Prosecutor]: Did you observe [Jones] eat, smoke, drink, or place anything in his mouth during this time?

A: No.

[The Prosecutor]: When you began the chemical test was the green Led light on the instrument displayed lit?

A: Yes.

[The Prosecutor]: Did you then press the "run" switch, enter the password, and enter the evidence tape?

A: Yes.

[Jones's Counsel]: The Defense is going to object at this point. It sounds like we're just going to hear a string of leading questions about what he did. They need to be in proper format.

THE COURT: Overruled. Proceed.

[The Prosecutor]: Did you then follow the display request for information and enter the requested information into the keyboard?

A: Yes.

[The Prosecutor]: When the please blow message appeared in the display, did you place a new mouth piece in the breath tube and instruct [Jones] to blow into it?

[Jones's Counsel]: Judge, objection. At this time the Defense would enter a continuing objection to each of these questions.

THE COURT: Noted for the record. Overruled. . . .

Transcript at 61-63. The State asked Trooper Madison a few more yes/no questions related to administering the chemical breath test to Jones.

24

As noted above, the policy behind Ind. Evidence Rule 611(c) is to prevent an attorney from substituting his or her own language "for the thoughts of the witness *as to material facts in dispute*." Williams, 733 N.E.2d at 922 (emphasis added). The Indiana Supreme Court has likewise emphasized that a leading question is one "which, *embodying a material fact*, admits of a conclusive answer in the form of a simple 'yes' or 'no.'" Doerner v. State, 500 N.E.2d 1178, 1182 (Ind. 1986). Also, where a witness's testimony is not distorted to conform to the possibilities suggested by the question, any error resulting from the question is harmless. Id. at 1183.

Here, prior to the State's line of questioning at issue, Trooper Madison testified that he was certified as a chemical breath test operator by the Indiana Department of Toxicology. The State then asked: "Trooper Madison, what procedures did you use to administer the chemical test?" and he replied: "[Y]ou got to follow the guidelines. They're posted right above every instrument, and you look right up at it, and follow each line as you go." Transcript at 61. Following this exchange, the State requested that the court take judicial notice of the procedures, the court did so, and the State thereafter asked Trooper Madison the yes/no questions recited above establishing that he followed the procedures regarding Jones's test.

Based upon our review of the record, we find that the State's questioning challenged by Jones did not concern material facts which were in dispute. Indeed, Jones does not argue that Trooper Madison improperly administered the chemical breath test or otherwise demonstrate that Jones was prejudiced by the State's decision to ask yes/no questions establishing that the test complied with the procedures. In so holding, we again

25

recognize that as noted above, evidence pertaining to the chemical breath test was superfluous to sustaining Jones's conviction as the State presented a multitude of other evidence establishing that he operated a vehicle while intoxicated. Accordingly, we conclude that the court's ruling regarding the State's line of questioning does not require reversal.

III.

The third issue is whether the sentence imposed by the court was invalid. In Jones's abstract of judgment, the court stated that "following completion of the executed portion of the sentence defendant to be placed on probation for 325 days with special conditions set forth in the order of probation issued on this date," which included that Jones not consume alcohol and undergo a substance abuse evaluation and a mental health evaluation and follow the recommendations, attend an impaired drivers victim impact panel, perform eighty hours of community service, and incur a ninety day license suspension. Appellant's Appendix at 25. Thus, the court ordered Jones to serve his term of probation concurrent with the suspended portion of his sentence.

Jones argues that the court erred because it sentenced him "to a combined period of imprisonment and probation greater than one year, contrary to Indiana law." Appellant's Brief at 18. Jones argues that he was convicted of a class A misdemeanor and the court sentenced him to forty days executed, 325 days suspended, and 325 days of probation for a total of 690 days. Jones argues that "[i]n *Collins v. State*, the Court of Appeals recognized that a 'term of imprisonment' under Indiana Code Section 35-50-3-

26

1(b) includes both the executed and suspended portions of a sentence. 835 N.E.2d 1010, 1018 (Ind. Ct. App. 2005), *trans. denied*." Id. at 19.

Ind. Code § 35-50-3-2 provides in relevant part that "[a] person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year . . . ." In addition, Ind. Code § 35-50-3-1(b) provides in part that:

> [W]henever the court suspends in whole or in part a sentence for a Class A, Class B, or Class C misdemeanor, it may place the person on probation under IC 35-38-2 for a fixed period of not more than one (1) year, notwithstanding the maximum term of imprisonment for the misdemeanor set forth in sections 2 through 4 of this chapter. *However, the combined term of imprisonment and probation for a misdemeanor may not exceed one (1) year*.

(Emphasis added).

Here, the language contained in the abstract of judgment plainly states that Jones was ordered to serve forty days executed followed by a probationary term of 325 days, which is a combined term encompassing one year. To the extent that Jones suggests that the court's sentence of 325 days suspended should be added to the 325 days of probation for a total sentence of 690 days, we observe that in Smith v. State, 621 N.E.2d 325 (Ind. 1993), a trial court sentenced a misdemeanant to a term of 110 days executed to be followed by one year of probation. At the time, the relevant version of Ind. Code § 35-50-3-1(b) was unclear as to whether such a sentence was illegal, and the Indiana Supreme Court held that it was, stating "that a combined term of probation and imprisonment exceeding one year is inconsistent with the maximum term for conviction of a misdemeanor."[6] 621 N.E.2d at 326. In so holding, the Court noted that "fundamental

_____

[6] As recently observed by Judge Barnes, the 2001 amendment to Ind. Code § 35-50-3-1(b)

27

sentencing guidelines with respect to treatment of felonies likewise apply to misdemeanors" and that "[t]he trial court has the option, in sentencing a class A misdemeanant, to *suspend the sentence in whole or in part and to place the defendant on probation*, so long as the combination of the *executed sentence and the probationary period* do not exceed the maximum statutory sentence for that offense."  Id. (quotations omitted) (emphases added).  We conclude that the court did not err in sentencing Jones.[7]

For the foregoing reasons, we affirm Jones's conviction and sentence for operating while intoxicated as a class A misdemeanor.

Affirmed.

BAILEY, J., concurs.

VAIDIK, J., concurs in result with separate opinion.

---

effectively codified the Court's holding in Smith when it added the "combined term of imprisonment and probation for a misdemeanor may not exceed one (1) year" language.  Peterink v. State, 971 N.E.2d 735, 738 (Ind. Ct. App. 2012) (Barnes, J., concurring in part and dissenting in part), trans. pending.

[7] We observe that this subject is currently on transfer to the Indiana Supreme Court.  In Jennings v. State, the defendant was sentenced to "the maximum sentence of 180 days, with thirty days executed, 150 days suspended, and 360 days of probation" for a class B misdemeanor conviction.  962 N.E.2d 1260, 1261 (Ind. Ct. App. 2012), trans. granted, 974 N.E.2d 1020 (2012).  This court held that "the statutory phrase 'term of imprisonment' included both the executed and suspended portions of a misdemeanor sentence, and because Jennings was sentenced to a 180-day term of imprisonment (composed of thirty executed days and 150 suspended days), his term of probation could not exceed 185 days."  Id.

# IN THE
# COURT OF APPEALS OF INDIANA

EDWIN JONES,                )
                                    )
    Appellant-Defendant,     )
                                    )
        vs.                )     No. 49A02-1204-CR-292
                                    )
STATE OF INDIANA,       )
                                    )
    Appellee-Plaintiff.      )

**VAIDIK, Judge, concurring in result.**

I concur with the majority opinion in whole, including that the Certification asserting the accuracy of the breath-testing device is non-testimonial and therefore the trial court did not violate Jones's confrontation rights by admitting it into evidence.

I wrote the opinion in *Ramirez v. State*, 928 N.E.2d 214 (Ind. Ct. App. 2010), which was decided before *Williams v. Illinois*, 132 S. Ct. 2221 (2012). I agree with the majority that the Supreme Court's later decision in *Williams* would not affirm the third rationale articulated in *Ramirez*. However, I disagree with the majority's reframing of that third rationale in light of *Williams*. Instead of finding that the certificates of inspection are "prepared for purposes of criminal litigation, . . . [but] are not prepared in anticipation of litigation in any particular case or with respect to implicating any specific

29

defendant," *id.* at 218, the majority would find that the "primary purpose [of the certificates of inspection] is to ensure that certain breath test equipment is in good operating condition in compliance with Ind. Code § 9-30-6-5." Slip op. p. 18. I respectfully disagree with this. I still believe that these certificates of inspection are generally "prepared for purposes of criminal litigation." Therefore, in light of the Supreme Court's decision in *Williams*, I would simply eliminate the third rationale articulated in *Ramirez*.

Despite this difference, I still agree with the majority that the Certification is non-testimonial and therefore not subject to confrontation under *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). Following the first two rationales set forth in *Ramirez*, the certificate of inspection was "not prepared at a judicial proceeding or during police interrogation," and was not a "sworn affidavit[] and do[es] not contain formalized testimonial materials." *Ramirez*, 928 N.E.2d at 217-18. Instead, the certificate was prepared at the direction of the Indiana University School of Medicine Department of Pharmacology and Toxicology and in accordance with its approved procedures. The certificate also was not a sworn affidavit and only contained the results of a machine-calibration test. Unlike forensic analysis of an unknown substance, like that at issue in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 308 (2009), the machine-calibration test in question in this case required no human interpretation or analysis to either run the test or obtain results, making it void of any testimonial material on which a witness would need to be cross-examined.

I therefore agree with the majority that the Certification is non-testimonial and the trial court did not violate Jones's confrontation rights by admitting it into evidence.